WALTER FORD v. THE STATE.

No. 1753. Decided March 1, 1899.

1. **Cross-Examination of Defendant—Written Memorandum of Statement Made by Defendant After Arrest.**

A written memorandum of a statement made by defendant to the sheriff, after defendant had been arrested and warned by the sheriff, may be used by the prosecuting attorney in his cross-examination of the defendant who becomes a witness in his own behalf.

2. **Reading Cases to Jury—Bill of Exceptions.**

A bill of exceptions saved to the reading, by the State's attorney, from the Criminal Reports to the court in presence of the jury, to be sufficient, should set out the cases read, or contents thereof.

3. **Cross-Examination of Defendant's Witnesses as to His Insanity.**

Witnesses who have been introduced and examined by defendant as to his insanity, and who have testified as to acts and conduct of defendant upon which they based their opinions, may, on cross-examination by the State, be asked if, in their opinion, defendant knew right from wrong.

4. **Res Gestae—Statements and Declarations of Defendant—Bill of Exceptions to Excluded Evidence.**

Where a bill of exceptions only shows that the excluded evidence was a statement made by defendant ten minutes after the homicide, and some five hundred yards from the scene of the occurrence, it does not show that said statement was a part of the res gestae where it fails to show what defendant was doing in the interim between the homicide and the said statement; and the court did not err in excluding the evidence.

5. **Murder—Manslaughter—Adequate Cause—Charge.**

On a trial for murder, it was not error for the court to refuse a charge upon manslaughter where defendant's own testimony fails to show an adequate cause, his testimony being that deceased drew a razor upon him and attempted to cut him, but he does not testify to any assault on him inflicting pain or bloodshed.

**6. Murder in the First Degree—Evidence Sufficient.**

See opinion for a summary of the facts, which are held amply sufficient to support a verdict and judgment of conviction for murder in the first degree, inflicting the death penalty.

APPEAL from the District Court of McLennan. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for murder in the first degree; penalty, death.

Appellant was charged by the indictment with the murder of Lucinda Moore by shooting her with a pistol, on the 25th day of June, 1898.

The evidence showed that defendant had been paying his attentions to the deceased for more than two years; that they were lovers and were engaged to be married.

Kate Peterson, who seems to have been the only person at the house besides deceased and defendant when the difficulty commenced, testified that she and deceased were in the kitchen talking when defendant appeared in the doorway and spoke to deceased, and said he wished to talk with her privately. They went into an adjoining room, out of sight of witness, and were gone but a moment when witness heard a noise, and Lucinda, the deceased, came running back into the kitchen, crying, "Walter, I will marry you,"—defendant having hold of her with one hand and his pistol in the other; that defendant then fired one shot. That witness ran out of and around the house; that witness ran in direction of the south corner of the front yard fence, and when witness had arrived about at the front gate, she heard a second pistol shot; that she turned around and saw deceased at about the southeast corner of the house, and defendant about at the well; that deceased kept running and screaming with defendant close behind with pistol in hand; that deceased ran out of the yard into the street, and when in the middle of the car track defendant shot at her again; that defendant ran through the hall of her home and around the corner of the gallery; that deceased ran into witness' house and through the hall and jumped off the gallery, and defendant was still running after deceased with a pistol in his hand; that deceased ran back across the street in the direction of the creek; that she saw defendant in pursuit; that she saw defendant shoot at deceased while both were running; that deceased ran down into the creek, which is only a ravine, usually dry, and deceased and defendant were lost to view; that defendant shot again in his pursuit; that she heard only three shots fired in all; that witness was frightened and much excited; that she knew defendant, and knew that he was a lover of deceased; that she never heard any conversation between deceased and defendant, other than the greeting at the doorway; that she did not know that defendant was on the place until he was standing in the doorway; that she never heard deceased refuse to marry defendant; that she did not know what caused the killing. Witness stated that she saw defendant holding deceased by the shoulders attempting to turn deceased around facing defendant; this was at the beginning of the affray.

That she heard Lucinda, the deceased, screaming all during the pursuit, and saying, "Walter, I'll marry you." Don't know whether deceased had any of defendant's things, or why defendant came there that morning. That at no time during the trouble, from the beginning to the end, did Lucinda have any knife or weapon of any kind. Witness saw defendant after the shooting; he was coming up ·from the creek, saying, "I am ready for any of her friends;" saw the deceased after the shooting. Deceased died that night at about 8 o'clock. This occurred about 11 o'clock in the morning, in McLennan County, State of Texas.

Witness stated that she did not see deceased have any razor.

The main facts testified to by this witness were corroborated by other witnesses who saw parts of the transaction· and shooting after deceased and defendant left the house.

Insanity was one of the defenses interposed by defendant. Most of defendant's own witnesses, upon this issue, stated on cross-examination that they believed defendant knew right from wrong; and the medical experts, three or more of whom testified, said that, from the evidence adduced, it did not appear that defendant was insane.

*H. P. Jordan*, for appellant, filed an able brief, and also an able argument on his motion for rehearing.

*Robt. A. John*, Assistant Attorney-General, for the State.—The declarations of defendant made after the killing were not res gestae, and being self-serving declarations, were properly excluded by the court. Stephens v. State, 20 Texas Crim. App., 255; Bradberry v. State, 22 Texas Crim. App., 273; Jones v. State, 22 Texas Crim. App., 324; Pharr v. State, 10 Texas Crim. App., 485; Allen v. State, 17 Texas Crim. App., 637; Williams v. State, 29 Texas Crim. App., 89.

The court did not err in refusing to charge on manslaughter. A charge upon manslaughter is not required where the proof shows murder of either degree, or justifiable homicide. Jones v. State, 40 Texas, 188; Hudson v. State, 40 Texas, 12; Myers v. State, 33 Texas, 525; Grisson v. State, 4 Texas Crim. App., 374; Roberts v. State, 5 Texas Crim. App., 141; Boyett v. State, 2 Texas Crim. App., 93; Halbert v. State, 3 Texas Crim. App., 656.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

Appellant objected to the district attorney, while cross-examining the defendant, who had taken the stand, and been examined in his own behalf, using a memorandum or written statement of said witness in his cross-examination. Said memorandum appeared to have been a statement made by said defendant to the sheriff, after his arrest, and after he had been warned. The grounds of objection to the same were that it was not a sworn statement, and was made while defendant was in great excitement, his reason dethroned, and without the benefit of coun-

sel, or warning by officers, etc. The court, in certifying to this bill, states that there was no evidence that defendant was excited, but, on the contrary, the statement made by him, and from which the district attorney read, was a voluntary statement made by the defendant to the sheriff, etc. We do not understand any objection to be here urged to the introduction of said statement in evidence, but merely to the use of it by the county attorney in the cross-examination of said witness. We know of no rule which would exclude the use of said memorandum under the circumstances.

As explained by the court there was no error in the action of the State's attorney in reading from the criminal reports to the court in the presence of the jury. The cases, or the contents thereof, are not stated, so that it is impossible for us to determine whether or not, under any circumstances, the reading of said reports was of an injurious character.

Appellant objected to the witnesses John Brown, Cosmos Riley, and Ed. Williams being permitted to state on their cross-examination by the State that, in their opinion, appellant knew right from wrong. The ground of objection stated to this testimony was to the effect that said witnesses had never qualified to give opinions, and that said testimony was prejudicial to the rights of the defendant. As explained by the court, these witnesses were introduced by appellant to testify as to his insanity, and in their direct examination they testified as to acts and conduct of appellant within their knowledge, upon which they based their opinions. Their examination by the State was the exercise of legitimate cross-examination.

Appellant objected to the exclusion by the court of certain testimony. The bill is as follows: "Be it remembered that on the trial of the above styled and numbered cause the defendant offered to prove by three witnesses, to wit, Jim Sott, Bill Redding, and Elvin Powell, that on the date upon which he shot the deceased, Lucinda Moore, and within ten minutes after said shooting was done, and within 500 yards of the scene of the shooting, he made the following statement: That the defendant went to Lucinda Moore's house for the purpose of getting some of his own things, which he had previously left in her possession. While there, and requesting the delivery of said articles, the deceased and the defendant quarreled, whereupon the deceased cut with a razor the coat sleeves and shoulder of the coat which defendant was then wearing, which made the defendant mad, and that he shot her, in order to keep her from killing him. That said witnesses would have testified to these facts before the jury, and upon the trial of this case, if the court had permitted them to do so; but the county attorney, when said testimony was offered, objected to this evidence upon the ground that the declarations made by him to these witnesses were self-serving declarations, too remote, and not sufficiently connected with the main transaction as to render them admissible as res gestae evidence; to which ruling of the court in excluding this testimony the defendant then and there excepted upon the ground that the statement sought to be proven by these

witnesses was made by the defendant within ten minutes after the act was committed, and within about 500 yards of the place where the act was committed, and under circumstances which precluded the idea that they were deliberated upon, and concocted for the purpose of serving the purposes of the defendant in this case; and that said declarations of the defendant were admissible in his behalf as a part of the res gestae." Of course, if these statements or declarations as presented in the bill of exceptions were res gestae, the court committed an error in excluding the same. In our opinion, the bill should show all the circumstances which constitute the statement of appellant, under the circumstances, res gestae; that is, the bill should show on its face that the court committed an error in excluding the testimony, because, as shown, the excluded testimony was a part of the res gestae,—that is, statements or declarations of appellant springing out of the transaction itself. It should appear that the statements were closely connected with the homicide in point of time, though not necessarily exactly contemporaneous, but so near as to suggest the absence of fabrication; and it should further appear to be spontaneous, and not merely the relation of a past transaction. In our opinion, this bill does not come up to these requirements. We are not informed what appellant was doing in the meantime; that is, in the interim between the homicide and his relation of the matters contained in the bill. We are simply informed that he made these statements ten minutes afterwards, and some 500 yards away from the place of the homicide. As presented, it appears to be merely a statement disconnected from the main transaction, which was the homicide, and to be the statement or relation by him of how it occurred. We do not believe the court erred in excluding this testimony, because the bill does not show that it was part of the res gestae of the homicide.

Appellant complains of the court's charge, because there was no instruction on manslaughter. We have examined the record carefully, and fail to find any manslaughter in this case. Whatever may have been the passion excited in appellant's mind, the record utterly fails to show any adequate cause for such passion. Appellant's own evidence, if it is to be credited, would suggest the theory of self-defense at the inception of his attempt to take the life of deceased. He says that the deceased drew a razor on him, and attempted to cut him; but, even from his own testimony, there is no evidence of any assault on him inflicting pain or bloodshed. The court gave a charge on self-defense, and we fail to see any predicate for a charge on manslaughter.

The court also gave a full and fair charge on the appellant's defense of insanity; but the jury, by their verdict, appear to have regarded him as sane; and under the evidence, when they ascertained this fact against him,—which they were thoroughly justified in doing,—there was no alternative left but to find defendant guilty of murder in the first degree, for in the annals of crime but few murders surpass this in atrocity. It appears that simply because the deceased, who was a young girl, and had previously been engaged to appellant, declined to marry him, he

armed himself, went to her home, began an assault on here there, and when she fled he pursued her, firing shot after shot into her body, and, when brought to bay, although she promised if he would desist and spare her life, she would marry him, he refused to listen to her piteous appeal, but shot her to death in her defenseless condition. Under such circumstances the jury was justified, not only in finding him guilty of murder in the first degree, but assessing against him the highest penalty known to our laws for that offense. The judgment is in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.

[NOTE.—Appellant's motion for rehearing, filed March 13, 1899, was overruled without a written opinion.—Reporter.]