## MRS. FRANK COLLIER V. THE STATE.

### No. 9676.   Delivered October 28, 1926.

**1.—Murder—Principals—Issue Properly Submitted.**

Where, on a trial for murder, following the killing of Buster Robertson by the husband of the appellant, the issue of principals being clearly raised by the evidence, and correctly presented in the charge of the court, in the form used, which has been many times approved by this court, no error is shown.   See Condron v. State, 138 S. W. 596, and other cases cited.

**2.—Same—Manslaughter—Charge On—Properly Refused.**

To constitute the offense of manslaughter in this state the condition of the mind of the accused at the time of the homicide, that is, anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, must be produced by an adequate cause, that is one recognized as adequate under our laws.   There are, of course, conditions which would produce such a mental state, that would not be deemed adequate cause in law.   There being no testimony tending to establish any such adequate cause in this case, the court properly refused to charge on the issue of manslaughter.

**3.—Same—Continued.**

Not only must the evidence establish that there was an adequate cause for the agitation of the mind, but it must further be shown by the proof that the mind was agitated to the extent necessary to render it incapable of cool reflection, at the very time of the homicide.   There is nothing in the record which sheds any light on the condition of the mind of the appellant at the very time of the shooting.   See Coates v. State, 203 S. W. 904, and other cases cited.

**4.—Same—Evidence—Properly Received.**

Where, on the trial of the wife for murder, her testimony given at the habeas corpus trial of her husband, who was charged with same offense, was properly admitted against her.   Where the wife is called as a witness by her husband, the cloak of privilege is thereby removed from her testimony, and the state will not be denied the right to use the testimony so given by her in his behalf, on a subsequent trial of the wife for the same offense.   See Blumes v. State, 26 S. W. 675.

**5.—Same—Jury and Jury Law—Officer in Charge of Jury.**

Where, on a trial for murder, during the trial the jury was placed in charge of a man named Davis, whom the sheriff testified was not under bond of any kind, but had been acting under him as a deputy sheriff, and had been acting as such deputy sheriff for about a month before the trial, and had summoned witnesses and done other work for the sheriff, such facts would constitute the said Davis a de facto officer.   See Words and Phrases, Col. 2, page 1845.

**6.—Same—Evidence—Held, Sufficient.**

While the evidence in this case was not as strong as it might have been, we believe that it was of sufficient probative force to warrant the

verdict. The case was properly and fairly submitted to the jury by the court, and it was their duty to weigh and determine the facts proven. Finding no error which would warrant a reversal, the judgment is in all things affirmed.

Appeal from the District Court of Haskell County, on a change of venue from Wichita County. Tried below before the Hon. Bruce W. Bryant, Judge.

Appeal from a conviction of murder, penalty ten years in the penitentiary.

The opinion states the case.

*W. H. Murchison, Cummings & Davenport,* and *Weeks, Morrow, Francis & Hankerson* of Wichita Falls, for appellant.

*James V. Allred,* District Attorney; *Sam D. Stinson,* State's Attorney, and *Nat Gentry,* Assistant State's Attorney, for the State. On the trial court's refusal to submit manslaughter, the state cites:

Coates v. State, 203 S. W. 904.
Ford v. State, 50 S. W. 350.
Adams v. State, 33 S. W. 354.
McDade v. State, 11 S. W. 672.
Guerrero v. State, 171 S. W. 731.
Cook v. State, 171 S. W. 227.

BERRY, JUDGE.—The offense charged is murder, and the punishment assessed is ten years in the penitentiary.

The appellant is the mother of the wife of deceased. The deceased was nineteen years of age at the time of the killing. The record discloses the fact that on the night of the 14th of February, according to the testimony of Mrs. Robertson, the mother of the deceased, he received a telephone call from Mary Frances Collier, his wife, and immediately after the telephone conversation, witness and her son left home to go to the Collier residence. While waiting for the street car, appellant and her husband, Frank Collier, drove up in an automobile and the deceased said to witness, there is Mr. and Mrs. Collier now. The record shows that the car stopped and the deceased went to the car and asked where Mary Frances was; that Frank Collier got out of the automobile and walked up to the mother of the deceased and asked her what she had to say in regard to Mary Frances and Buster (Buster being the given name of

deceased) ; witness testified that she assured him that Mary Frances would never be abused as long as she was in her house; that Frank Collier grabbed Buster's arm when the deceased cried out he is going to kill me; that immediately thereafter Frank Collier drew a pistol and killed deceased.

The record further shows that while the mother of deceased was standing over his prostrate body the appellant used the following language: "Roll the car back, Frank, so she can see him herself; said let's roll the car back so she can see he is dead."

The state also offered other testimony to the effect that in the summer of 1924 appellant had said that she wished Buster, meaning the deceased, would leave her daughter alone, and in one of these conversations the record shows she said: "If he doesn't, I am going to have Collier shoot him or kill him."

And at another time she said that "She would rather see Mary Frances in her coffin than married to Buster Robertson." These conversations took place prior to the time that appellant knew the deceased was married to her daughter. The record further shows that after the killing, appellant told a witness, "We think we were justified and I want you to wait to hear our side," or "our reasons in this case." "We haven't told anyone yet, but I just want to ask that—No one knows our side of it. I feel like if he hadn't done it I would have."

The state also introduced in evidence a part of a statement made by appellant on the habeas corpus trial of her husband to the effect that on the night of the killing she was at the home of her sister and that her husband came up there that night and that she, her daughter and her husband ate supper at the home of her sister, and that her daughter telephoned to the home of the deceased that night; that deceased had asked her daughter to phone and see if he could have a date with her, and appellant told her that she could not, and her daughter then told appellant to go to the Robertson home that night and talk to Mrs. Robertson, and appellant first told her that she might do this, but appellant wanted to talk things over with her daughter first; she further testified that she had no intention of going to the Robertson home at all, but told her daughter this to keep her from going off until it was too late for her to go; that when her daughter found out that she was not going to the Robertson house, she got mad and said: "If they did not go over there she would phone Buster and ask him to come after her," and that she did call Buster over the phone and told him to come after her and he said he would; and that she, appellant, then said

that if Buster Robertson "come over after Mary Frances she would blow his brains out, and got up to get the gun in the middle bedroom; and when she said what she did about blowing his brains out, she went and got the gun and her daughter got up and ran out; she testified on the habeas corpus trial of her husband that her husband took the pistol away from her, and it was this same pistol with which the killing was done."

This, we think, is a sufficient statement of the facts. Appellant raises many questions and argues them with much force and ability in the able brief she has filed in this case. It is impracticable to attempt to discuss all of the questions presented. One of the more serious questions presented is on the court's action in submitting to the jury the issue of appellant being a principal in the commission of the offense. The writer has had great difficulty in solving this question. However, after a careful consideration of the entire record, we are constrained to hold that the court did not err in submitting this theory of the case to the jury. In addition to the statement of facts above, we deem it proper to say that the undisputed testimony of the state's witnesses show that immediately prior to the time the shots were fired by the husband of the appellant, that appellant said something to him, but the record failed to disclose what the statement that she made to her husband at that time was. While we recognize that the law is clear to the effect that a party could not be convicted upon mere suspicion, or mere presumption, yet we must ever bear in mind that our system of practice has confided to the jury in the trial of a case the prerogative of passing upon questions of fact, and any conclusions to be drawn from fact questions are very properly left to the jury. To hold that the evidence does not raise the issue of appellant aiding by acts and encouraging by words in the instant case, would be equivalent to us concluding as a matter of law that the statement made by the appellant to her husband, Frank Collier, just prior to the shooting was an innocent statement, when the character of the statement, under our system, and the effect it had upon the said Frank Collier, is, in our judgment, clearly a question of fact, left for the solution of the jury.

The criticism of the form of the court's charge in submitting the issue of principals is, we think, without warrant. The form used has been approved by this court in many cases:

Condron v. State, 138 S. W. 596.
Dowling v. State, 140 S. W. 225.
Cordes v. State, 112 S. W. 943.

Complaint is made of the court's action in refusing to charge on the issue of manslaughter. We are forced to take this record as it stands. The evidence introduced for the appellant in this case is exceedingly meager and whatever may have been the passion excited in appellant's mind, the record fails to show any adequate cause for such passion. It would hardly do to announce a doctrine in Texas that because a young girl refuses to become separated from her husband at her mother's request, that such refusal on the part of said girl would constitute adequate cause. Of course there might be conditions under which the mother's mind would become agitated and her passion aroused and there might be conditions under which such passion would be aroused by an adequate cause, but the record in the instant case fails to disclose such condition, if it existed.

In addition to what has already been said, it is proper, we think, to add that the record in this case utterly fails to show the condition of the appellant's mind at the time of the killing. It is true that she was evidently excited and enraged a short time prior thereto, but we think there is no testimony in this record shedding any light on the condition of her mind at the time of the homicide. From what has been said, it follows that in our opinion the learned trial judge did not err in refusing to submit the issue of manslaughter

Coates v. State, 203 S. W. 904.

Ford v. State, 50 S. W. 350.

Adams v. State, 33 S. W. 354.

McDade v. State, 11 S. W. 672.

Guerrero v. State, 171 S. W. 731.

Cook v. State, 171 S. W. 227.

Complaint is made of the court's action in permitting the state to use upon this trial the testimony of the appellant, given in behalf of her husband at his habeas corpus trial. It is appellant's contention that the testimony of the wife cannot be used against the husband in any criminal case under the provision of the Code of Criminal Procedure of Texas, and that Frank Collier was not actually on trial in the habeas corpus case and was not therefore subject to criminal penalty. We think that appellant's contention is not tenable. The testimony offered was voluntarily given by the wife when called by her husband as a witness in his habeas corpus hearing for this same offense. Under no rule of construction could it be considered as testimony against him. In fact so far as his guilt or innocence is concerned, the testimony offered was favorable to him and tended to establish

his innocence. In no event, however, would we hold that the wife may be called by her husband to give testimony and the cloak of privilege be thereby removed from her testimony and that the state should then be denied the right to use same as against her when she is on trial. We find no case where this identical question has been decided, but as tending to sustain the conclusion we have reached, we cite the case of Blumen v. State, 26 S. W. 675.

Appellant contends that error was committed in that the jury was placed in charge of a person other than a duly authorized officer of the law, while they were considering their verdict. This question has given us no little concern, and were it one of first impression with us, the writer would not hesitate to hold that Davis, the party who was placed in charge of the jury by the sheriff was not a de facto or de jure officer, but it seems that the overwhelming weight of authority in this and other states is to the effect that Davis was a de facto officer and we do not feel justified in deciding this question against the great weight of authority. The identical question was decided contrary to the appellant's contention by the Court of Civil Appeals in the case of Broach v. Garth, 50 S. W. 594; see also Williams v. State, 247 S. W. 263.

The record discloses that the sheriff testified on hearing of motion for new trial that Davis, the party who had charge of the jury, was not under any kind of bond so far as the sheriff knew, but he had been acting under him as deputy sheriff and he had requested Davis to help him with that term of the court; that he had helped him before and that he had been acting as deputy sheriff of the county for about a month; that he had summoned witnesses prior to this time, some of them about three or four weeks before that and that he had performed other duties in line with the office of deputy sheriff for about a month. Many authorities will be found under the title of de facto officers in Vol. 2, page 1845, of Words and Phrases, to the effect that the facts above stated would bring Davis within the category of a de facto officer.

We have given this record our very earnest consideration and we have reached the conclusion that no error is shown.

While the facts are not as strong as they might be, yet we believe that they are of sufficient probative force to warrant the

·verdict. Finding no error in the record, the judgment is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.