### Perry Moore v. The State.

#### No. 4437.   Decided May 9, 1917.

**1.—Occupation—Injurious to Health—Requested Charges—Sufficiency of the Evidence.**

Where, upon trial of carrying on an occupation injurious to health, etc., under article 694, Penal Code, the evidence was sufficient to sustain the conviction, on a proper charge of the court prepared by the defendant, there was no reversible error.

**2.—Same—Evidence—Opinion—Unsanitary Conditions.**

Where, upon trial of carrying on an occupation injurious to health, etc., testimony was admitted that defendant's place of business, towit, a slaughter house near a stream, was in a most unsanitary and filthy condition, the term *unsanitary*, although somewhat an expression of opinion by the witness, was nevertheless admissible under the circumstances of the case, inasmuch as non-expert witnesses, both for the defendant and the State, used the term *sanitary* and *unsanitary*, and the lowest penalty being assessed, there was no reversible error.

**3.—Same—Evidence—Other Transactions—Res Gestae.**

Upon trial of carrying on an occupation injuries to health, etc., there was no error in admitting evidence that defendant left a dead animal on his own premises near those of a neighbor, which was offensive to the latter; this was descriptive of the conditions of defendant's premises, etc., and was part of the res gestae, and this although there may have been another prosecution under another article of the Penal Code against the defendant. Following Landrum v. State, 73 Texas Crim. Rep., 580, and other cases.

**4.—Same—Evidence—Slaughter House—Condition of Premises.**

Where defendant was charged with carrying on an occupation injurious to health, etc., towit, a slaughter house, etc., there was no error in admitting testimony to show the filthy condition of the premises, as to flies swarming around the hides and bodies of slaughtered animals, etc., that the water was polluted around the premises, and little children played about it, and this, although it may have been a separate offense; besides, similar testimony was admitted without objection. Following Wagner v. State, 53 Texas Crim. Rep., 306.

Appeal from the County Court at Law No. 2 of Harris.   Tried below before the Hon. Murray B. Jones.

Appeal from a conviction of carrying on an occupation injurious to the health of others; penalty, a fine of ten dollars.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, *John H. Crooker,* and *E. T. Branch,* for the State.—On question of other offenses: Landrum v. State, 73 Texas Crim. Rep., 580, 166 S. W. Rep., 726, and other cases cited in opinion.

MORROW, JUDGE.—Appellant was prosecuted by indictment under article 694 of the Penal Code, and his trial before a jury resulted in a conviction and the assessment of a fine of $10.

Article 694 is as follows: "If any person shall carry on any trade, business or occupation injurious to the health of those who reside in the vicinity, or shall suffer any substance which has that effect to remain on premises in his possession, he shall be punished by fine not less than ten nor more than one hundred dollars; and each separate day of carrying on such business, trade or occupation, or of permitting such substance to remain on the premises, shall be considered a separate offense."

To make plain the questions discussed we set out the charging part of the indictment, as follows: Appellant "did then and there carry on a business injurious to the health of the people who reside in the vicinity of said business, towit: the said Perry Moore did then and there carry on a business known as a slaughter house near a stream known as Little White Oak Bayou and near the Link road in said county, and about a mile and a half from the courthouse of said county, the stench and smell from said business being offensive to the smell and injurious to the health of said people, and the said Perry Moore did then and there permit substances injurious to the health of said people to remain on the premises in his possession, towit: the above described premises on which he permitted to remain then and there blood and entrails and a dead carcass of a head of cattle which was swarming with flies and a wagon reeking with foul odor and covered with a swarm of flies."

The court gave no general charge but submitted the question to the jury in two special charges prepared by the appellant. One of these informed the jury that the fact that the business conducted by appellant was unpleasant to persons in the neighborhood would not render it illegal but that a conviction could only be had in the event the evidence showed beyond a reasonable doubt that it was injurious to the health of such people. The other told the jury that appellant was charged with carrying on a business injurious to the health of people who reside in the vicinity of his premises and that he permitted substances injurious to the health of such people to remain on his premises and told the jury that the burden rested upon the State to prove beyond a reasonable doubt that he did carry on such a business or that he did permit such substances to remain on his premises and that

unless this burden was discharged and it was shown that the acts were injurious to the health of the people, to find for the defendant.

There was evidence that appellant's place of business was near a stream called Little White Oak Bayou; that he conducted a slaughter house; that the odor from the premises was offensive; that there was a dead head of cattle exposed on the premises, surrounded by swarming flies, emitting an offensive odor; that the place was filthy; that blood and entrails had been left on the floor; that the wagon used by appellant for hauling slops and other refuse stood on the premises covered with filth and emitting an offensive odor; that appellant's hog pens adjoining his slaughter house ran across the Little White Oak Bayou, part of it being included in the hog pens and was filthy from the hog pens, which emitted a bad odor; that he kept a number of hogs on the premises and slaughtered animals every week; that he permitted cows which died on the place to remain several days; that the stench from the premises caused a family of neighbors to have spells of vomiting; that a large number of animals died on the place, and some had been allowed to remain for some time; that the smell from the slaughter house and hog pen, where decayed fish and decayed meat were fed to the hogs, was sickening and caused a stench. One doctor testified that vomiting would be injurious to health.

The appellant introduced witnesses who testified that they lived near and that appellant's premises were kept clean; that there were occasional odors, but they did not interfere with the family; that the refuse was all burned. The health officer testified that he inspected the premises and found them clean. Other physicians gave similar testimony. The fact that the carcass of a cow or calf remained upon the premises an undue length of time was controverted by witnesses who also claimed that the garbage cans were kept in a sanitary condition. Appellant testified that there was but little odor from the carcass and that the garbage cans were never used twice in succession but were cleaned and used alternately; that is, he used two sets, using one one day and one the next. A pure food inspector also testified that he inspected the premises and found things clean and in a sanitary condition.

The issue of fact with reference to the condition of the premises and with reference to whether they were in a condition to injure health was sharply contested. The case, however, was tried upon the theory that an issue of fact was presented and was decided by the jury upon the charges prepared by appellant, and we are not able to say that the jury was not authorized to find against him.

The members of the grand jury inspected the premises and testified as witnesses. One of them said that the appellant's place of business and premises were the most unsanitary and filthy places he ever saw in his life. Objection was urged to this evidence that it was immaterial, irrelevant, prejudicial, not germane and merely the opinion of the witness. That part of the statement which described the premises as unsanitary was, we think, rather the expression of an opinion. The part

of the statement that the place was filthy, however, was not subject to this objection. It appears that the non-expert witnesses generally, for the defendant as well as the State, used the term "sanitary" and "unsanitary"; and taking into consideration the way the matter is presented and the way that term is treated in the record and the fact that the lowest penalty was assessed, we do not regard the admission of this testimony as reversible error.

Another bill complains of the fact that the testimony was heard that a head of cattle was on appellant's premises near the residence of Mrs. Gauley. It is suggested in the bill that there was a separate prosecution against appellant under article 696, to which this testimony would have been relevant. The record fails to show by anything authentic that there was another prosecution. Granting, however, that it was shown, we think the evidence was admissible. It was descriptive of the condition of appellant's premises, and the fact that his premises were near those of Mrs. Gauley would be a part of the res gestae so to speak, and the fact that leaving the dead animal on his own premises near the residence mentioned might be an offense would not preclude its proof in connection with this prosecution. Golden v. State, 22 Texas Crim. App., 1; Railey v. State, 58 Texas Crim. Rep., 1; January v. State, 66 Texas Crim. Rep., 302, 146 S. W. Rep., 555; Landrum v. State 73 Texas Crim. Rep., 580, 166 S. W. Rep., 726.

Objection is also made to testimony that there were a quantity of flies swarming around the entrails and hide and blood in the slaughter house and around the dressed meat and that the water standing on the premises was covered with green scum. This testimony was relevant and admissible.

Another bill complains of testimony that children played along Little White Oak Bayou in the neighborhood of appellant's premises and that the water of the bayou was polluted by appellant's hog pen. Appellant contends that this testimony should have been excluded, because it tended to prove a separate offense. What has been said with reference to the same contention in regard to another bill is applicable here. Moreover, this same testimony, except that part of it with reference to the children, was given by other witnesses without objection; in other words, it was evidence already in the record with appellant's consent. Wagner v. State, 53 Texas Crim. Rep., 306. We regard the testimony, however, as admissible. The evidence shows that a part of the bayou had been made a part of the hog pen on premises used in connection with appellant's business, and that decayed fish and meats were fed to the hogs in the pen. The fact that appellant might have been prosecuted under another statute (art. 696) for polluting the stream would not render the testimony objected to inadmissible, it being relevant to the offense with which he was charged.

Finding no reversible error in the record, it is ordered that the judgment of the lower court be affirmed.

*Affirmed.*