ALLEN ANDERSON v. THE STATE.

No. 4989. Decided April 10, 1918.

### 1.—Murder—Continuance—Practice on Appeal.

In the absence of a bill of exceptions the overruling of the application for a continuance will not be considered on appeal.

### 2.—Same—Bill of Exceptions.

A bill of exceptions, which is not approved by the trial judge, can not be considered on appeal.

### 3.—Same—Argument of Counsel—Bill of Exceptions.

Where the bill of exceptions was defective, in being entirely too indefinite to be considered on appeal to review an objection to the argument of counsel, there was no reversible error.

### 4.—Same—Bill of Exceptions.

Where the bill of exceptions did not state the object and purpose of the testimony rejected, or why it was sought to be introduced the same can not be considered on appeal.

### 5.—Same—Evidence—Threats—Rule Stated.

Where, upon trial of murder, the defendant testified that he had always been kind and affectionate to deceased, there was no error in admitting testimony in rebuttal of defendant's declaration that he was going to kill every one of his family; the deceased being his daughter. Besides, the testimony came within the rule of admitting threats against the deceased.

**6.—Same—Evidence—Intent—Bill of Exceptions.**

Where the ground of objection is not sufficiently verified in the bill of exceptions, it can not be considered on appeal. However, where defendant claimed innocent intent in killing the deceased, there was no error in showing his intent to kill the deceased on an occasion some time prior to the homicide.

**7.—Same—Evidence—Bill of Exceptions.**

Where, upon trial of murder, the defendant claimed accidental killing, there was no error in admitting testimony in rebuttal that defendant declared just before the killing that he was going to kill the whole family, the deceased being his daughter.

**8.—Same—Evidence—Declarations of Defendant—Intent.**

Where, upon trial of murder, the defendant testified to an accidental shooting of deceased, there was no error to admit testimony in rebuttal that some time before the killing defendant declared he would kill the whole G— d— family, deceased being his daughter.

**9.—Same—Evidence—Acts and Declarations of Defendant.**

Upon trial of murder, there was no error to show that some five years prior to the homicide, the defendant shot at the deceased with a shotgun; he claiming accidental shooting in the instant case.

**10.—Same—Bill of Exceptions—Stenographic Notes—Evidence.**

Where the bill of exceptions did not state the object and purpose of objecting to the court's ruling excluding the transcribed stenographic notes of defendant's stenographer at the examining trial of defendant in the Justice Court, but the court announced to the defendant that witness could refer to said notes in testifying, there was no reversible error; moreover, the rejected testimony would have been detrimental to the defendant by showing his threat to kill the deceased.

Appeal from the District Court of Kaufman. Tried below before the Hon. Joel R. Bond.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Huffmaster & Huffmaster,* for appellant.—On question or argument of counsel: Turner. v. State, 39 Texas Crim. Rep., 322; Pollard v. State, 33 id., 197.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at thirty-five years confinement in the penitentiary.

The State's case is that appellant killed his daughter; that he had previously shot at her in Rusk County before moving to Kaufman County, and had threatened to kill every member of the family. On the evening of the killing he returned from Dallas in an automobile driven by his son, and upon reaching home got out of the car, went upstairs where his daughter and wife were, and shot the daughter and threatened to kill

his wife, who grabbed the gun, which was finally taken from him.   His theory was that as he got out of the car at the front of his home, passing around it he was struck and one of his ribs broken; that he was stabbed in the shoulder; that he ran upstairs to get his gun, and his daughter undertook to take the gun from him when it was accidentally discharged, inflicting the fatal wound.

The court overruled appellant's application for a continuance.   This will not be considered because a bill of exceptions was not reserved to such ruling.

Bill of exceptions No. 1 was not approved by the judge, therefore it can not be considered.

Bill No. 2 recites that while Herbert Young, assistant county attorney, was making the opening argument for the State he used the following language: "Gentlemen of the jury: If this negro had a good reputation in East Texas they had the witnesses here to prove it; they brought the witnesses from East Texas and placed them on the stand, but not one time did they ask any of them what his general reputation in that community was." To the use of this language appellant's counsel excepted and requested the court to instruct the jury not to consider the language. This bill is signed without qualification, but is rather indefinite, we think, to be considered. What the facts were with reference to the question presented by the prosecuting attorney's argument are not stated, and whether his reputation was an issue in the case is not stated. The bill must be sufficiently complete to manifest the error in such manner as to be considered.

Another bill recites that the appellant placed several named witnesses on the stand and offered to prove that each of said witnesses had lived near the defendant and his family in Rusk County in East Texas for the past seventeen or eighteen years next before the defendant moved to Kaufman County, and that they knew the witness Alberta Anderson, who testified for the State during the time she lived with defendant and his family in East Texas, and that she was a daughter of the wife of defendant but not a daughter of the defendant; that her name was not Alberta Anderson but Alberta Harris, and that she was generally known in East Texas as Alberta Harris, and the jury being retired said witnesses testified as above before the court.   The State objected to this testimony, and the objection was sustained.   This bill does not state the object and purpose of this testimony, or why it was sought to be introduced.   In order to entitle this bill to consideration it should have stated the object and purpose of introducing this testimony.

There is another bill showing that Lou Allie Anderson, State's witness, testified: "Papa run around the car and run in the house and said, 'I am going to kill every God damned one of the family,'" and to this testimony defendant objected upon the ground that it was immaterial, irrelevant and prejudicial, and not a threat against deceased or any particular member of the family.   The court qualifies this bill by stating the testimony was admitted for two reasons: first, for the purpose of

showing intent after the defendant had testified to an accidental shooting; second, it was admitted in rebuttal to the testimony of several witnesses, including the defendant, who testified for the defendant that they had known the defendant and his daughter Genett for several years, and that he was always kind and affectionate to her. This testimony, under this statement, was clearly admissible. His daughter Genett was the girl killed by appellant, and was a member of the family. This testimony brings her sufficiently within the rule of admitting threats of this character against appellant. We deem it unnecessary to cite the authorities.

Another bill recites that while Alberta Anderson was on the stand she testified as follows: "When we lived in Rusk County, Texas, I saw my father shoot at my sister, Genett Anderson. He shot at her with a shotgun. He did not hit her. She ran around the corner of the house and he missed her." Appellant objected to this upon the ground that it showed an assault upon the deceased by defendant four or five years ago, and too remote and prejudicial. These objections were overruled. At what time this shooting occurred is not stated. The ground of objection that it occurred four or five years prior to the shooting in the instant case is not a statement of fact, but a reason for objection. The court, however, signs this bill, first, because it was admitted for the purpose of showing intent after the defendant had testified to an accidental shooting; second, it was admitted in rebuttal of several witnesses, including the defendant, who testified for the defendant that they had known the defendant and his daughter Genett for several years and that he was always kind and affectionate to her. The reasons given are sufficient answers to the objections, even if the bill was sufficiently explicit to be considered.

Alberta Anderson, as shown by another bill, testified that, "Defendant come and went through the house, and said he was going to kill the whole God damn family." The grounds of objection are not stated in this bill, and this is all there is to it, except the qualification of the court, which shows it was admitted for the purpose of showing intent after the defendant had testified to an accidental shooting; second, it was admitted in rebuttal of the testimony of several witnesses, including defendant, who testified for the defendant that they had known the defendant and his daughter Genett for several years and that he was always kind and affectionate to her.

The witness Jones was permitted to testify that he lived on the Cartwright farm near Crandall. "The defendant, Allen Anderson, has lived with me on the farm for about three years. Some time last May or June I went to his house and found he had run the family off and was sitting in the house with a gun. He told me then, 'Mr. Jones, I am going to kill the whole God damn family and then you will have to kill me.'" Objection was urged on the ground that it was immaterial, irrelevant and prejudicial, and could in no way shed any light on the subject under inquiry, and was not a threat to kill the deceased or any particular member of the family. These objections were overruled, and the court qual-

ified this as he did the previous bills, first, that it was to show intent after defendant had testified to an accidental shooting, and that it was also admitted in rebuttal of the testimony of several witnesses, including the defendant, to the effect that they had known defendant and his daughter Genett for several years, and that he was always kind and affectionate to her. As stated with reference to the other bills, this testimony was admissible upon the grounds stated by the court, and perhaps other grounds.

Another bill shows Spence Anderson testified: "When we lived in East Texas about five years ago I saw father shoot at my sister Genett with a shotgun." Objection was urged to this upon the ground that this was an assault upon the deceased of long ago and too remote and prejudicial to defendant and tended to inflame the jury against defendant. The same reason was assigned by the court in his qualification to the bill for admitting the testimony as given in the previous bills. We think the ruling of the court was correct.

Another bill recites that appellant placed Mrs. Lillie B. Hindman upon the stand, and at the request of the State the jury was retired from the court room, and she testified: "My name is Mrs. Lillie B. Hindman. Am a stenographer and have been doing stenographic work for the past ten or twelve years. I took the testimony down at the examining trial of the defendant at the Crandall Justice Court. This is a true and correct copy of the testimony of the witness Alberta Anderson at said trial. Said witness testified there just like I have transcribed her testimony here. This is a question and answer copy of her testimony at said trial and is correct. She was asked the question at said trial: What did he say? He said he was going to kill every God damn one of them that was on the place. This is the exact question and answer she testified there. This question and answer was asked her there and this is the answer she made. I have no independent recollection of her testimony but by reference to my shorthand notes and this transcribed copy I know she was asked this question and made this answer." The jury was then recalled, but the evidence was not allowed to go to the jury. Appellant excepted to this action of the court in refusing him the right to make such proof. The object or purpose of this testimony is not stated. This testimony would have been detrimental to defendant, because it contains evidence of a threat to kill all of them on the place. The court makes this statement: "The transcribed stenographic notes were not permitted to be introduced, but the witness could have referred to her notes and testify as to her recollection of the facts, and the court so held and stated to the defendant. The defendant's attorney declined to ask witness for her recollection but insisted on introducing the written memorandum. The witness was no court reporter, but the private stenographer of the defendant's attorney." Under no aspect of this bill does it show error. The object and purpose is not stated why this testimony should be admitted. If it was intended to contradict the statement of some of the other witnesses who said he would kill every damn member of the family,

the language used by the different witnesses with reference to this threat was not materially different. The object and purpose was not stated for seeking this testimony, and we are of opinion that, viewed from any standpoint, it would have been detrimental rather than beneficial to the defendant.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, JUDGE, absent.