LATTIMORE, Judge.
 

 Appellant was convicted in the district court of Llano county of murder, and his punishment fixed at life imprisonment.
 

 On October 23, 1922, appellant shot and killed Bart Cooper in the town of Llano. The killing took place at night in an alley. The State put on witnesses who testfied to a number of threats to kill made by appellant a few minutes before the homicide and extending back for a period of time; it was also shown that but two shots were fired, both from appellant’s pistol; that one bullet entered the body of deceased about the navel and ranged downward and to the left hip; that the other bullet entered the head an inch or more above the right eye and came out about the outside corner of the left eye, and that deceased was a much taller man than appellant; also that
 
 *661
 
 deceased was unarmed, seaeh of his body revealing the presence of a closed up knife in his pocket. Appellant pled self-defense.
 

 The court heard a large number of witnesses upon the issue of a change of venue sought by appellant upon the ground of the existence of such prejudice against-him in the county as to prevent his obtaining a fair and impartial trial. The uniform holding of this court is that a refusal to change the venue will not be denied sufficient ground for the reversal of a case unless it be clear from the record that the trial judge abused his discretion in overruling the application. Examination of the testimony of the many witnesses introduced shows that a number of the defense witnesses and practically all of those for the State were of opinion that a fair and impartial jury could be obtained in Llano county. After the motion was overruled and the actual selection of a jury begun, the record reflects the fact that only 113 men were examined upon their voir dire before a jury was obtained. We have carefully considered the proposition and are of opinion that no abuse of the discretion confided in the trial court, appears.
 

 There is a bill of exception to the court’s refusal to sustain a challenge for cause to certain jurors. The jurors admitted that they had opinions formed from hearsay, but stated that they were not such opinions as would influence their actions, and each of them stated that if taken as a juror he would try the case upon the law and the testimony uninfluenced by what he might have heard. None of the jurors had talked with witnesses in the case or heard any such relate the facts.
 

 The proposition has often been before this court that one who had been charged in a justice court with a felony, might not be examined as to the fact of such charge, if the record showed that the grand jury had met subsequent to the arrest and making of the charge in the justice court, and had returned no bill of indictment. Bird v. State, 256 S. W. Rep. 278. Two bills of exception present appellant’s complaint of the refusal of the court to permit such cross-examination of the State witnesses.
 

 Ray Click testified for the State that on the night of the killing he ate supper with appellant at a restaurant in Llano. Witness also saw deceased in said place at the time. He swore that appellant pulled back his coat and showed him a pistol, saying “You see that son-of:abiteh” and witness replied that he did, and appellant remarked that it was on there to “kill some son-of-a bitch with” and that he did not care who it was. Witness also testified that after finishing his supper he went away and in a short time, not exceeding twenty minutes, he heard the shots fired which took the life of deceased. Objection was made to the statement of Click in regard to the threat
 
 *662
 
 made by appellant, tbe ground of the objection being that there was no reference to deceased in the threat and that in fact appellant was referring to a certain State ranger with whom he had had a disagreement during the day. We have carefully examined the testimony of Click and note that he refused to state in answer to the direct question to that effect, that he understood appellant to refer to said State ranger, in what he said. Click testified that he knew appellant had had some trouble with a ranger that day, and that during the conversation at supper appellant had mentioned said ranger, but when appellant’s counsel asked witness the direct question if it was not his opinion that appellant had reference to said ranger when he made the statement quoted, witness replied “I don’t know who he had reference to”. The rule laid down seems to admit threats whose language is broad enough to comprehend the killing of the deceased, and the question as to whether in fact the threat was intended for deceased seems to be one for the jury to decide. Miller v. State. 31 Texas Crim. Rep. 636; Mathis v. State, 34 Texas Crim. Rep. 39; Hedrick v. State, 40 Texas Crim. Rep. 535; Hillis v. State, 163 S. W. Rep. 717; Anderson v. State, 83 Texas Crim. Rep. 276. That deceased was included in the' threat is beyond question, and it is shown by other testimony that shortly after this remark and while deceased was still in the restaurant, appellant went on the outside where he walked up and down and made direct personal threats to then kill deceased, stating that deceased was his enemy and was a stool pigeon for the law. In that connection it was shown that appellant threatened to kill another party who was on the outside of the restaurant unless said other party stayed and watched him kill deceased, and that when deceased came out of the restaurant and started down the street and reached a point about the mouth of the alley, appellant called to him, walked down and overtook him and turned with him into said alley where, in a moment or two, he shot and killed deceased.
 

 We perceive no injury in admitting testimony that about a week before the homicide appellant said he did not have long to live, that he just as soon swap out with anyone.
 

 The defense sought to have State witness McKneely admit that he had in substance said to three parties that appellant saved a good man from having to kill deceased; and also that witness said that appellant would not have killed Cooper if he had not been justified. We are unable to see how the opinion of the State witness upon these matters became relevant or material.
 

 Analysis of the various threats of appellant against deceased made it clear that he- regarded deceased as in some way connected with the officers, and it was not error to permit the State to ask appellant if ha did not have in his room quantities of whiskey and if he wae not
 
 *663
 
 dealing in whiskey, and if he did not know that deceased was a revenue officer. These questions were .each answered by appellant in the negative, but had they been answered in the affirmative would have shed much light upon the motive of appellant in committing the homicide.
 

 The reputation of deceased as a dangerous and violent man was the subject of conflicting testimony introduced by appellant and the State. Among others the State introduced W. C. Wallace who, when asked as to his knowledge of the general reputation of deceased, said that he had never heard it discussed. We find in the record a bill of exceptions complaining because said witness was not allowed to state on cross-examination by appellant that he knew the general reputation of deceased as a peaceable, law-abiding citizen and that he was a self-confessed burglar who had turned State’s evidence against other parties participating with him in a burglary. Such testimony was not admissible, it appearing that the proposed testimony sought on cross-examination was not based on any general discussion among the people who lived in the community but was based wholly on the fact, also sought, that deceased had turned State’s evidence against men implicated with him in the commission of a specific crime, and was therefore not law-abiding.
 

 There was an exception to the failure or refusal of the trial court to submit the law of manslaughter. Whether the action of the trial court was error would depend on facts. Appellant claimed self-defense and swore that just before he fired the fatal shots deceased accused him of stealing his whiskey, threatened to cut his throat, and struck two blows at him with a knife, or with the hand in which a few moments before deceased had a knife. He said that after the second blow by deceased, he jerked out his pistol and fired two shots in quick succession. No one else was immediately present at the moment of the killing, but a witness who placed himself in a position to see, corroborated appellant in the above testimony. Parties who saw appellant and deceased just before the homicide, and who saw appellant immediately after ward, were on the stand and none of them stated any words or facts upon which manslaughter could be predicated. Witnesses who saw appellant just before he went into the alley where the killing took place, stated that he was then threatening to kill deceased, and had his pistol in his hand just a moment before he went into the alley. Witnesses who saw him immediately after the shooting say that he walked into the restaurant, threw his pistol on the counter and said he had killed deceased but had to do it. The facts immediately attendant upon the killin'? as related by appellant made out a case of perfect self-defense and as viewed by us left no room for any supposition that possibly the
 
 *664
 
 jury might have rejected appellant’s theory of self-defense, but may have believed that he killed under sudden passion of some kind. Examination of the cases cited by appellant in support of this proposition shows them to be widely variant upon the facts from the ease now before us. In Steen v. State, 225 S. W. Rep. 531, the accused killed a total stranger following an attack -upon, and injury to, the property of the accused which was shown beyond question to have been believed by appellant as’ the work of members of the party in which deceased was. The stated purpose of appellant in firing at the car in which said party was riding, was to puncture the tires and thus check the escape of said party until he could have him arrested. Nothing suggested malice except the fact of firing at the car. The unquestioned surroundings of the transaction being such as could easily cause passion, we-held it error not to submit the law of manslaughter. In Dickens v. State, 218 S. W. Rep. 755, there was an apparent absence of circumstances showing malice, coupled with testimony by appellant that deceased had said that he was going to kill him if he ever caught him on his place again, and undisputed testimony that appellant was on the place of deceased at the time of the homicide, and other testimony leaving the question of self-defense in such questionable attitude as to strongly suggest that the killing was from fear, if without justification. In this condition we held manslaughter should have been submitted. In Lewis v. State. 231 S. W. Rep. 113, upon facts that were doubtful as showing beyond question a case either of murder or self-defense, and other errors also appearing, the case was reversed, the court holdng that manslaughter should have been submitted. These opinions approve the proposition that if the case be either murder of perfect self-defense, it is not error to fail to charge on manslaughter.
 

 In the case before us, taking appellant’s testimony and looking at it carefully, there appears no question of undue haste on his part which might suggest fear or terror; nor is there any question of whether there was an attack by deceased from which danger, real or apparent, arose. Appellant swore that he did not shoot until after deceased had threatened to cut his throat and had caught at the lapel of his coat and had made two blows at him with the hand in which a moment before deceased had an opened knife, and that believing deceased had the knife still in his hand and intended to cut his throat, he shot to prevent this. To our minds this testimony presented a complete case of perfect self-defense if the jury believed these facts. The theory of self-defense was submitted without any qualification and the jury were told that if they believed deceased had made, or was about to make, an attack on appellant, or that it reasonably so appeared to him as viewed from his standpoint at the
 
 *665
 
 time, taking into consideration "the manner and character of the attack, the relative strength of the parties and appellant’s knowledge of the character and disposition of deceased, — and that appellant killed deceased, acting under such reasonable apprehension or fear, he should be acquitted. Other authorities are cited by appellant beside those mentioned but we believe an examination of all of them will disclose eases wherein under the facts the jury might have accepted as true the testimony of the accused, or that of his witnesses, and still have fairly rejected the proposition of perfect self-defense. In such case it might, appear that the right of the accused would not be protected except by the giving of a charge on manslaughter.
 

 In this case it might not be amiss to say that on cross-examination appellant made many statements wholly at variance with other parts of his testimony and this went to such an extent that it was difficult to tell what he really intended to say. The State proved threats made by him recently before the homicide, to take deceased into an alley some night and shoot him in two; also on the night of the killing and just before same appellant repeatedly said he was going - to kill deceased, and that he had his pistol in his hand when deceased came out of the restaurant and walked to the alley at which point appellant called to him and went to him and the two went into the alley.
 

 There are a number of other bills of exception in the record each of which has been reviewed by us but none of which are deemed to present reversible error.
 

 Finding no error in the record, the judgment of the trial court will be affirmed.
 

 Affirmed.