John W. Cavanar v. The State.

No. 9049.   Delivered February 24, 1924.

Rehearing denied March 18, 1925.

1.—Murder—Bill of Exception—Must Conform to Rules.

Where on a trial for murder a bill of exception taken to the admission of statements made by appellant *on the ground* that the appellant was under arrest at the time, is not equivalent to a specific statement in the bill that appellant *was in fact under arrest.*

2.—Same—Evidence—Erroneous Admission of—Not Reversible Error.

Where testimony of a witness is admitted erroneously, it will not constitute reversible error, if the same evidence has been admitted without objection from another witness.   As is said in the Wagner case, 53 Crim. Rep. 307.   "It is well settled in this state that the erroneous admission of testimony is not cause for a reversal, if the same fact is proven by other testimony not objected to."

3.—Same—Practice—On Appeal—Rule.

The practice in this state is that when a ruling of the trial court upon the receipt or exclusion of evidence is attacked on appeal, the correctness of the ruling will be presumed, in the absence of a showing in the bill of exceptions to the contrary, and the presumption in favor of the ruling is not overcome by a mere recital in the bill of the *grounds assigned* for opposing the ruling.   See numerous authorities cited in this opinion.

4.—Same—Separation of Jury—Not Reversible Error—In this Case.

Where, upon the trial of this case, one of the jurors went into the toilet of the court house, and the other jurors went up stairs into the court room he following shortly, the separation was not such as to warrant a reversal. See Bayer v. State, 96 Tex. Crim. Rep. 310.

Appeal from the District Court of Limestone County.   Tried below before the Hon. A. M. Blackmon, Judge.

Appeal from a conviction for murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Wallace W. Mason,* and *E. G. Lloyd, Jr.,* of Groesbeck, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for life.

It seems that the appellant and his wife were in their house alone; that at some time between the evening of the 20th of April and the

morning of the 21st of that month, the throat of the appellant's wife was cut and she was killed. The appellant's throat was cut and he was wounded. There was a razor found, and its condition, together with the appearance of the premises, indicated that the homicide had been committed with the razor in the house in which the deceased and appellant were found.

Two boys were the first to discover the condition of appellant and deceased. According to the testimony of one of them, he and a companion went to the home of the appellant and knocked on the door. Receiving no response, they looked in the window and saw the appellant and his wife lying on the floor. Appellant cursed the witness and told him to go away. The boys informed the witness Reese, father of the deceased, who went immediately to the premises and found his daughter and the appellant lying on the floor facing each other. The daughter was dead. The witness said to the appellant: "John, what did you do this for; what did you kill her for?" Appellant replied: "I was tired of living." The witness testified "I thought he was dying then or would be dead in a few minutes." Popejoy, the sheriff, and Bradley, his deputy, arrived after a short time. Upon entering the premises, Popejoy found the deceased and appellant lying upon the floor. The appellant was wounded and blood was coming out of the windpipe as he breathed. There was a razor laying upon the floor near the appellant's feet with blood upon it. The witness noticed that the appellant opened his eyes, looked up and was trying to speak.

Bradley testified that while appellant was lying on the floor, about thirty of forty minutes after the witness reached the scene, and while the sheriff had gone for a truck, the appellant made a reply to a question propounded by Bradley, which question and answer were received in evidence. A bill of exceptions was reserved to the receipt of this testimony in which it is said:

"The said defendant, by counsel, objected to the introduction of said evidence at the time it was offered for the reason that same was a statement of the defendant confessing his guilt, made by him to an officer while he was under arrest and in the custody of said officer without the defendant being first duly warned that he did not have to make any statement and that any statement he made might be used in evidence against him on his trial for the offense for which he was under arrest."

The court, in charging the jury on the issues in the case, said that the testimony of Bradley could be considered alone in passing upon the question of sanity or insanity of the appellant at the time of the killing and that it was limited to that purpose. It is to be noted that the bill does not affirmatively state that the appellant was under arrest at the time. From the bill it appears that Bradley, a

deputy sheriff of Limestone County, was called as a witness and testified on behalf of the State as follows:

"John Cavanar made a statement to me while lying in the middle of the floor. 'I asked him why he did what he did', and he said, 'I wanted to go and wanted her to go with me'."

The balance of the bill is quoted above.

The rule is well established that the mere statement of the ground of objection does not supply the necessary requisites of a bill. See Branch's Ann. Texas P. C., p. 134, sec. 209. In other words, in the present case, the mere statement in the bill that there was an objection made upon the ground that the appellant was under arrest at the time is not equivalent to a specific statement in the bill that the appellant was in fact under arrest.

The testimony of Bradley of which complaint is made, however, is substantially the same as that revealed by the witness Reese, which statement seems to have been made by the appellant before the officers arrived and before there was any question of arrest. According to his testimony, Reese rushed into the premises and observing the conditions, asked the appellant why he killed the deceased and received the reply which the witness detailed, as above set out. If in this view we are correct, the rule of evidence which ordinarily obviates the necessity of a reversal for the receipt of improper testimony when the same evidence from another source is before the jury without objection, would operate upon the testimony of Bradley. This question was under consideration in Wagner's case, 53 Texas Crim. Rep. 307, in which Judge Ramsey, writing the opinion, used this language:

"It is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony not objected to. See Rogers v. State, 26 Texas Crim. App. 404; Walker v. State, 17 Texas Crim. App. 16; Johnson v. State, 26 S. W. Rep. 504; Stephens v. State, 26 S. W. Rep. 728; Logan v. State, 17 Texas Crim. App. 50; West v. State, 2 Texas Crim. App. 460, and Carlisle v. State, 37 Texas Crim. Rep. 108.

This principle has been applied in many subsequent cases. See Snow v. State, 91 Texas Crim. Rep. 1; Charles v. State, 85 Texas Crim. Rep. 537; Davis v. State, 83 Texas Crim. Rep. 546; Mason v. State, 79 Texas Crim Rep. 169; Moore v. State 81 Texas Crim. Rep. 302; Smith v. State, 81 Texas Crim. Rep. 369; Utsler v. State, 81 Texas Crim. Rep. 504; Goss v. State, 83 Texas Crim. Rep. 353; Kountz v. State, 241 S. W. Rep. 161; Nochols v. State, 238 S. W. Rep. 234.

Touching the testimony of Bradley, however, it may be plausibly contended that its receipt in evidence would be justified under the rule of res gestae. See Calloway v. State, 92 Texas Crim. Rep. 508; also motion for rehearing, p. 516. At all events, it may have been

dispense with the necessity that the judge certify to the facts upon which the objection is founded. Conger v. State, 63 Texas Crim. Rep. 327.

The motion to quash the array of the jury panel is upon the ground that there is not a city of 20,000 inhabitants or more in Eastland County as shown by the last census. It was shown that the largest town in the county contained something over 14,000 inhabitants. It is not shown that there were not other cities the aggregate of whose population, to gether with that of Ranger, the largest city, would not have exceeded 20,000. The population of the county, as shown by the last census, is over 58,000.

The statute designating the counties in which the jury wheel shall operate uses this language:

"That between the 1st and 15th day of August of each year, in all counties in this State having therein a city or cities containing a population aggregating twenty thousand (20,000) or more people, as shown by the United States census of date next preceding such action, etc." (Art. 5151, R. S.)

From this we do not understand that to bring the jury wheel into operation the law requires that there shall be a city of more than 20,000 inhabitants where there are several cities, the aggregate population of which equals or exceeds that number. The law contemplates that a list of jurors for the coming term should be drawn not less than ten days before the term begins. See Art. 5154, R. S. The trial being otherwise regular, the failure to observe the directions of the statute with reference to the time, as appears to have been done in the present case, would not, in our judgment, in the absence of injury shown, require the setting aside of the panel. See King v. State, 234 S. W. Rep. 1107.

The complaint was sworn to by E. C. Bettis, and the jurat was signed "W. J. Barnes, County Attorney of Eastland County, by Gilvie Hubbard, Assistant County Attorney." The information was signed in the same manner. The affidavit and jurat made by an officer authorized by law to administer the oath certifying that this was done are a part of a complaint (Articles 34, 269, 479, and C. C. P.), and in the absence of an indictment are an essential requisite to a prosecution. The assistant county attorney possesses the authority to take and certify the complaint but it has been held in many cases that a certificate such as the present is not in compliance with the law in that it indicates that the oath was administered by the deputy in the name of his principal, and, if valid, it should certify that it was made by the assistant, who, in fact, administered the oath. Following the example of other courts, this one, in the case of Arbetter v. State, 79 Texas Crim. Rep. 487, held that the complaint certified with a jurat like the present was insufficient to support the prosecution. This practice has been followed in other

*99 Tex. Crim.—27.*

cases, among them, Goodman v. State, 85 Texas Crim. Rep. 280; Anthony v. State, 90 Texas Crim. Rep. 351. As indicated by some of the judges participating in the previous decisions, it would seem that a contrary view with reference to the sufficiency of the jurat might have been logically reached. See dissenting opinion in Arbetter's case, supra, and concurring opinion in Goodman's case, supra. Such is the view of the present personnel of this court, but because it relates to a question of practice and construction of statutes which the Legislature has since left unchanged, this court feels constrained to follow it.

For want of legal complaint, the jurgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

# JUNE, 1924.

### Willie Lee Shine v. The State.

#### No. 8370.   Delivered June 11, 1924.

#### Rehearing granted March 4, 1925.

**1.—Manslaughter—Self-Defense—In Defense of Another.**

While it is settled that one may act in the defense of another who is in danger of death or serious bodily injury, and is entitled to the protection of our laws of self-defense, unless the issue is raised by the evidence it is not proper for the court to submit the issue in his charge. In the instant case we do not think the issue was raised by the evidence and the court properly refused the requested charge of appellant embracing such issue.

**2.—Same—Provoking the Difficulty—Issue Not Raised.**

The firing at deceased by Douglass the companion of appellant, did not constitute a *provoking* of the difficulty, but was the *beginning* of the difficulty, and if appellant thereafter participated in the difficulty, he would have no more right of self-defense than Douglass, his companion had, and the law of provoking a difficulty has no application to such a state of facts.

**3.—Same—Special Charge—On Weight of Evidence—Properly Refused.**

When appellant requested a special charge which was upon the weight of the testimony, and sought to have the jury told the purpose for which they could consider the flight of Douglass, the companion of appellant who began the firing, such charge was manifestly erroneous, and was properly refused.

**4.—Same—Argument of Counsel—Objection to—Not Properly Presented.**

Where a bill of exception complains of the argument of the State's attorney to the effect that if appellant was acquitted, he would kill a white man, without setting out the surroundings, and causes which led to the statement, but it is made to appear that upon objection the court promptly withdrew the argument, and instructed the jury not to consider it, no error is presented.

ON REHEARING.

**5.—Same—Assault to Murder—Issue Presented.**

Where the theory of the defense which is supported by the testimony, is that Douglass a companion of appellant first fired at deceased, and that upon the deceased returning the fire a shot struck appellant, in his coat sleeve, and that thereupon, under stress of excitement and in his own defense, appellant fired one shot, that was not shown to have struck deceased, and the court not having submitted the law of principals, involving an acting together by appellant, and Douglass, a charge on assault to murder, and aggravated assault should have been given.

ON REHEARING.

**6.—Same—Self Defense—In Defense of Another—Issue Raised.**

Appellant's theory of self defense, in the defense of Douglass from the attack of deceased made on Douglass, and his participation in the shooting, in defense of Douglass as well as in his own defense, upon a more careful analysis of the testimony, on rehearing, leads us to believe that such issue was in the case, and that it was error for the court to refuse a special charge requested by appellant presenting this issue, and the rehearing is granted, the judgment of affirmance is set aside and the judgment reversed and the cause remanded.

Appeal from the District Court of Newton County. Tried below before the Hon. V. H. Stark, Judge.

Appeal from a conviction for manslaughter; penalty, four years in the penitentiary.

The opinion states the case.

*Howth, Adams O'Fiel & Hart,* of Beaumont, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Newton county of manslaughter, and his punishment fixed at four years in the penitentiary.

Deceased and one Shankle were at the house of Smith Johnson at night. As they were leaving deceased pulled a pistol at the gate and fired it five times in the air. The parties then walked on down to the road. Here they were overtaken by appellant and Son Douglass. According to the testimony of Shankle, appellant and Douglass both pulled pistols and asked Shankle and deceased what they knew about some fellows who had done some shooting up in front of the house. Shankle said that appellant pulled his pistol on him and that he threw up his hands and that deceased did not put his hands up but put his hand to his pistol and began to move down the hill. Witness said that Douglass was holding his pistol on Gatlin and at this time said, "Stop, stop, if you don't I'll shoot", but deceased did not stop. Douglass then fired at deceased and appellant also began shooting at him. Witness Shankle said after appellant began shooting he, witness, whirled and ran. This witness

said that appellant fired several times and that he was shooting in the direction of deceased. One Fowler testified that on the night of the shooting he saw two men walk up to Shankle and deceased and heard them accuse said parties of doing the shooting at Smith Johnson's and heard one of the two say, "Let's hold them up and see" and that deceased walked off and Shankle threw his hands up, and that one of the men who had walked up to deceased and Shankle, shot deceased. This witness said deceased got his pistol but he did not know whether he shot any. He also testified that the other man fired, too. He said that when the shooting began he ran away. From the testimony of this witness and his description of the men by their size and appearance it would be concluded that the man who fired the first shot was Douglass. Witnesses who saw appellant shortly after the shooting testified that he had a bullet hole in his coat sleeve. Son Douglass seems to have been shot in the arm by some one. Appellant took the stand in his own behalf and testified that he and Son Douglass walked together down to where the shooting took place. They had heard some shooting shortly before that. Appellant and Douglass each had pistols of similar size and make. Appellant said that when they got down to where Shankle and deceased were that Douglass asked them if they were the ones who did the shooting up on the hill. That all the parties stopped and deceased and Shankle turned facing them. Appellant said that Douglass asked the other parties if they were the ones who did the shooting. Deceased said, "It is none of your damn business," and pulled his pistol and that deceased and Douglas started to shooting about the same time. Appellant said that when he got shot in the sleeve he pulled his pistol and fired one shot, but that he did not know which way he was shooting, that he was scared and excited at the time and after he fired he ran away. Questioned as to whether the shot that he fired killed deceased, appellant said he did not know whether he killed him or not, that he was afraid, and that after he got his in the sleeve he was trying to protect himself.

Appellant requested a number of special charges all of which have been carefully examined and in the refusal of none of which do we find reversible error. The court instructed the jury upon manslaughter and self-defense based on both real and apparent danger. The first special charge sought to have the jury instructed that they could not convict the defendant of more than manslaughter. In view of the fact that he was only convicted of manslaughter, this could present no error. Special charge No. 2 sought to have the jury told that if appellant's shot struck and killed deceased, but that at the time he was laboring under such a degree of terror and excitement as to render his mind incapable of cool reflection, that he could be guilty of no higher grade of offense than aggravated assault. This would plainly not be the law. Special charge No. 3 presented the

law of self-defense upon apparent danger and seems to have been fully covered by the charge of the court. Special charge No. 4 sought to have the jury instructed as to the law of self-defense in defense of another. We have carefully examined the statement of facts and find nothing therein either in the testimony of the appellant or in any of the circumstances surrounding it which would call for a charge upon this theory. If the State's testimony be true, appellant and Douglass with their pistols, accosted deceased and his companion and Douglass fired the first shot. The subsequent acts of appellant during the continuation of the same difficulty could not be predicated upon any theory of the defense of Douglass. Appellant was his own only eye-witness and if his testimony be true it no where suggests that he fired the one shot which he claims to have fired, in defense of Douglass. Special charge No. 5 seems to be based upon the proposition that if appellant's companion Douglass fired the first shot and provoked the difficulty, defendant would have the same right to defend himself against such attack as he would have had had the shooting been first begun by deceased. We do not see how such conduct could be deemed provoking the difficulty. It seems clear to us that it would be the beginning of the difficulty, and if appellant thereafter participated in the difficulty with Douglass he would have no more right of self-defense than Douglass would have. Appellant's special charge No. 6 was upon the weight of the testimony and sought to have the jury told the purposes for which they could consider the testimony of the flight of Douglass. Such charge would have been manifestly erroneous. Special charge No. 7 sought to have the jury told that they could not consider the question of murder. This was not applicable but in view of the verdict of the jury presents nothing for our discussion. To the same effect is special charge No. 8. Special charge No. 9 asking a peremptory instruction of not guilty upon the theory that Douglass fired the first shot and killed deceased, is not supported by the testimony and the giving of same would have been erroneous. Under the State's testimony appellant and Douglass were both armed and acting together with pistols of the same make and size. The bullets that were found in the body of deceased might have been fired from the pistol of either appellant or Douglass.

An exception to the court's charge because of its refusal to submit the law of assault to murder seems to find no support in the testimony.. As above outlined, the State's case clearly supports the theory of an acting together on the part of appellant and Douglass, and the case made by the defense shows a shooting by appellant. Such shooting would either be felonious homicide in pursuance of an acting together with Douglass or in self-defense.

Appellant has a bill of exceptions complaining of the argument of State's attorney to the effect that if appellant was acquitted he

would kill a white man. The setting and surroundings and causes which led up to this statement are not shown in the bill, but it is made to appear that upon objection the court promptly withdrew the argument and instructed the jury not to consider it. We do not think it of that harmful character that would necessarily call for a reversal of the case.

The bill of exceptions complaining of the refusal of the motion for new trial presents nothing calling or discussion at our hands.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

MORROW, Presiding Judge.—I concur in the disposition of the case on the ground that the record shows no exception to the failure to instruct on defense of another, and no special charge appropriat to submit such issue if raised.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.—This case has given us trouble both upon original submission and upon motion for rehearing. We restate the testimony as a basis for our further observations. The parties interested were all negroes. A musical entertainment was in progress at Smith Johnson's home. Gatlin, Otis Shankle, Son Douglass and appellant were all there. Gatlin and Shankle left together. Shankle details what occurred as follows: That as they reached the gate Gatlin fired five shots from his pistol and reloaded it after which the two of them walked on in the direction of the church; that they were overtaken by appellant and Douglass; that appellant made some inquiry as to who had fired the shots; that witness said nothing; Gatlin said he did not know, but they had seen some other fellows turn up the road; that appellant and Douglass both pulled their pistols and appellant said, "We will search you first and see if you are the fellows;" that appellant held his pistol on witness and Douglass covered Gatlin; that witness put up his hands; that Gatlin did not but put his hand on his pistol and began slowly to move down the hill; that Douglass told him not to draw his pistol and to stop, that if he did not he would shoot; that Douglass then commenced shooting at Gatlin and Gatlin returned the fire; that appellant also was firing at Gatlin; that a number of shots were fired but witness could not tell how many were fired by any of the parties; that Gatlin was retreating down the hill, Douglass following and both shooting; that they were about seven feet apart; that appellant shot more than once; that Douglass and Gatlin had both fired several shots before appellant fired at all. The evidence shows that appellant was a large negro and Douglass a much smaller man. The witness Fowler did not know the parties but testified that

he saw two persons, both of whom had pistols, one being a tall man and the other a smaller one when they accosted Shankle and Gatlin; that the smaller man asked Shankle and Gatlin if they were the ones who had done the shooting to which one of them replied, "No;" that the smaller man said "Let's hold them up and see;" that Gatlin walked away and the man with him threw his hands up; that the smaller man then shot at Gatlin; that he saw Gatlin get his pistol but did not know whether he shot; that the big man shot also; that after several shots were fired the large man ran away and some shots were fired after he left; that Gatlin did not draw his gun until the small man shot at him.

Appellant proved by many of the State's witnesses his good reputation as a law-abiding citizen. He testified that he and Douglass were going to the Christmas tree at the church; that they heard the shooting near Johnson's place and when they overtook Gatlin and Shankle, Douglass asked if they were the ones who had done the shooting and that Gatlin replied, "What in the hell is it to you?" and immediately jerked out his pistol; that Douglass also drew his pistol; that he did not know which one got their pistol out first, but that they commenced firing about the same time; that after several shots had been exchanged between Gatlin and Douglass a shot struck appellant in the coat sleeve whereupon he drew his pistol and fired one shot and then ran off and hid in the brush; that he was frightened and excited and was trying to defend himself when he fired and did not know whether or not he fired towards Gatlin. Appellant denies there had been any demand for Gatlin and Shankle to throw up their hands or that anything had been said about searching them. According to appellant, neither he nor Douglass had their pistols out at the time the inquiry was made as to who had done the shooting near Johnson's place.. The evidence showed that appellant had a shot through his coat sleeve, and Douglass was shot through the arm.

The case was submitted to the jury independent of Son Douglass' connection with the transaction, no mention being made of appellant's rights or otherwise, depending on whether he acted with Douglass. The issue of principals was in no way submitted. The charge required the jury to believe that appellant fired the shot that killed Gatlin before a conviction could be had. Douglass and appellant had pistols identical in make and caliber and the wounds found on Gatlin's body threw no light on who fired the shots that struck him. The evidence leads more strongly to the belief that Douglass actually fired the fatal shot. Gatlin was backing down the hill firing as he went; Douglass was advancing and firing at Gatlin; they were only about seven feet apart. Douglass believed he had killed Gatlin. He said he was sure one shot from his pistol had struck Gatlin about the shoulders and that he was too close to

miss. While on his way to the doctor to have his arm dressed Douglass learned for the first time that Gatlin was dead. Douglass immediately ran away and was still a fugitive from justice when this case was tried. Appellant's version of the matter makes it even more questionable whether the shot from his pistol inflicted the wound.

Written exceptions were duly filed to the charge because it omitted any instruction on the issue of assault with intent to murder and aggravated assault. A special charge upon the latter issue was requested, as follows:

"If you believe that the defendant shot at the deceased, but missed him, and that at the time he shot at him he was laboring under such degree of terror or excitement as to render his mind incapable of cool reflection, aroused by the exchange of shots of others in his presence, and that such facts were sufficient to produce such excitement or terror in the mind of an ordinary person, viewed in the light of all the facts and circumstances, then you will find the defendant guilty of no higher grade of offense than aggravated assault, and if, upon this point, you have a reasonable doubt, you will acquit the defendant, and say by your verdict, 'Not Guilty' ".

The latter portion of this charge renders it inappropriate, but the specific exceptions to the charge for the omissions mentioned were sufficient to call the court's attention thereto, and the requested charge emphasized the matter. Bearing in mind that the case went to the jury without any charge on principals whatever, but apparently upon the theory that appellant was an actor independent of Douglass, we have concluded upon more mature consideration that under the evidence and the manner in which the case was submitted that the issues of assault to murder and aggravated assault should also have gone to the jury. Leaving Douglass out of the case, thus eliminating the questions as to whether he killed Gatlin and whether appellant was acting with him, then it would be the law that if appellant fired at Gatlin, but did not hit him, he would be guilty of assault with intent to murder or of aggravated assault, depending on his intent and the state of his mind at the time, provided he was not acting in self-defense.

The following special charge was requested and refused.

"I instruct you that if you shall believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed the deceased, yet if you shall further believe that at the time he did so he believed or it appeared to him that his companion, Son Douglass, was in danger of death or serious bodily injury on account of an attack then being made or about to be made by the deceased or his companion, if any, that you will acquit him; or if upon this point you have a reasonable doubt you will acquit him."

Appellant testified that at the time he fired he was acting in his

own self-defense and this issue was submitted, but if from all the evidence the issue as to the defense of Son Douglass was raised it should also have been submitted. (See Steen v. State, 88 Texas Crim. Rep. 257, 225 S. W. 529; and authorities cited in that opinion; also Ward v. State, 96 Texas Crim. Rep. 278, —S. W.—; Thompson v. State, 96 Texas Crim. Rep. 87, —S. W.—) In our analysis of the facts we have been unable to disassociate the acts of appellant from those of Douglass. This same trouble must have confronted the jury. If Douglass killed Gatlin not in self-defense, and appellant acted with him as a principal, he would be guilty of some grade of homicide regardless of whether his shot struck Gatlin. But what was appellant's rights if Douglass was acting in self-defense. In determining whether the special charge last above quoted should have been given it is necessary to look at the case from the defensive evidence. Appellant says that neither he nor Douglass had their pistols drawn when Douglass made an inquiry about who had done the shooting near Johnson's house, to which inquiry Gatlin replied, "What in the hell is it to you?" and immediately commenced to draw his pistol. If this be true, Douglass and appellant being together, either had a right to meet the offensive act of Gatlin by drawing his own gun in self-defense. If Gatlin and Douglass commenced to fire at each other, Douglass acting on the defensive, appellant would have the same right to defend Douglass as Douglass himself would have. Upon a more careful analysis of the testimony we are led to believe this issue was in the case. There was an entire omission from the charge of any reference to this subject. No specific exception because of the omission was presented, but the special charge requested called the court's attention to the omission. (See Boaz v. State, 89 Texas Crim. Rep. 515, 231 S. W. 790; Parker v. State, No. 7255 not yet officially reported.

For the reasons given the rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

# DECEMBER, 1924.

GORDON KING v. THE STATE.

No. 8316. Delivered December 17, 1924.

Rehearing denied March 18, 1925.

1.—Transporting Intoxicating Liquors—Jury—Talesmen—Properly Presented.

Where the regular jury panel has been exhausted, talesmen should be summoned, and on return made by officer summoning, their names be drawn,

and a list of such talesmen in the consecutive order in which they are drawn furnished appellant. This practice was followed in the instant case and no error is presented.

2.—Same—Conspirators—Acts and Declarations—Admissible.

Where two are more persons are acting together is the commission of an offense, statements made by his co-conspirator at a former time in furtherance of and connected with the common design, are admissible against the appellant.

3.—Same—Res Gestae—Admissible—Possession of Pistol.

Proof that at the time of his arrest appellant had a pistol was admissible as res gestae, and was not objectionable on the ground that it showed appellant was guilty of another offense.

ON REHEARING.

4.—Same—Circumstantial Evidence—Charge on—Not Demanded.

Where on a charge of transporting intoxicating liquor, it is shown that officers caught appellant in the actual possession of whisky, and transporting it, a charge on circumstantial evidence was not required.

5.—Same—Witness—Impeachment of—Held Proper.

Where a co-conspirator and principal with appellant made declarations of a material character before the arrest of appellant and himself, he is properly subject to impeachment when such statements are denied by him.

6.—Same—Term of Court—Extension of—Properly Refused.

Where appellant filed a supplemental motion for a new trial, alleging facts that necessitated the hearing of evidence, and requested an extension of the term of court to enable him to present the evidence, such request was properly refused, where such supplemental motion was not sworn to by appellant. See page 805 of Vernon's Ann. C. C. P. sustaining the proposition that a motion for a new trial, which calls for evidence to sustain its allegations, must be sworn to.

Appeal from the District Court of Bastrop County. Tried below before the Hon. R. J. Alexander, Judge.

Appeal from a conviction for transporting intoxicating liquor; penalty, one year in the penitentiary.

The opinion states the case.

*R. A. Brooks,* and *J. F. Hair,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Bastrop county of transporting intoxicating liquor, and his punishment fixed at one year in the penitentiary.

From the testimony of the State witnesses it is unquestioned that appellant transported intoxicating liquor on the occasion in question. He and one Montgomery were together. They came down the road

in a car and stopped. Here Montgomery took out of the car a box containing several fruit jars of whiskey and he and appellant came on some distance to where the officers commanded them to halt. The car in the meantime had driven away. When ordered to halt Montgomery threw down the whiskey he had and ran and appellant also threw away a quart of whiskey which he had and ran. The officers pursued them and arrested them. It was in proof that the night before Montgomery had sought to have a party go down into Lee county and haul some whiskey, and upon the refusal of said party Montgomery said he was going to have it brought if he had to walk. Both appellant and Montgomery testified that they got in the car with one Arvid Browning several miles from the point where the officers saw the party in the car, and that soon after they got in the car with him they discovered there was in the car a box containing whiskey. They further averred that when they reached the point where the officers said the car stopped and that appellant and Montgomery got out, that in fact they did get out of the car at that point but were only intending to carry the whiskey, which was in the car and which they said belonged to Browning, from the car to some point not far distant where they were going to leave it until Browning returned for it.

The brief filed by appellant contains no citation of authorities in support of any proposition advanced, nor have we been able to agree with any of the contentions made. The attack on the indictment appears trivial. The regular jurors being exhausted, talesmen were ordered by the court. When return was made by the officer summoning such jurors the names were placed in a hat and drawn. Appellant's complaint of this procedure is wholly without merit. Appellant and Montgomery appeared to be acting together and we see no error in admitting the testimony of statements made by Montgomery at a former time apparently in furtherance of and connected with the common design which actuated the two parties on the occasion in question. The testimony that appellant had a pistol was developed as a part of the res gestae of the transaction, and the complaint that the State thus showed the offense of carrying a pistol presents no error. We see no error in the action of the trial court in permitting the State to show that the medal which had been exhibited to the jury as part of the defensive testimony and which appellant asserts was awarded to him for bravery in action during the late war, was not what he claimed it to be. There are many bills of exception in the record wholly without merit and while all of them have been examined by us, we do not deem it necessary to discuss the various contentions made.

The judgment of the trial court will be affirmed.

*Affirmed.*

LATTIMORE, Judge.—Appellant urges that for refusal to submit the case on the theory of circumstantial evidence, it should have been reversed. The officers gave direct testimony as to the fact of transportation of the liquor by appellant, hence there was no call for such charge.

Appellant and one Montgomery were together and apparently acting together in the transportation of the liquor. What Montgomery may have said the night before of his purpose to transport liquor, would be material to the issue of transportation by him and appellant in this case. His impeachment in regard to such statement was, therefore, not open to the objection that it was allowing impeachment on an immaterial mattter. So also as to the matter as to who was with Montgomery and appellant in the car out of which the latter two got with the liquor shortly before their arrest. It was material to the issues in this case to show who said party was. Appellant and Montgomery testified on the trial that it was a man named Browning. Montgomery was impeached by showing that he had stated to various parties that the man who drove off in the car just before they were arrested, was a negro.

Complaint is made that the court refused to extend the term at the request of appellant, it being contended that this was to enable him to present some matters material to the proper presentation of his case. It appears that appellant was convicted on July 21st, and thereafter filed a motion for new trial. On the last day of the term, —the 28th of July,—he filed a supplemental motion setting up and relying upon certain facts issues. This supplemental motion was not sworn to. The request for an extension of the term was to enable appellant apparently to procure witnesses to testify relative to the things set up in this supplemental motion. If the matter thus involved was one which was not properly before the court, it would be manifest that the refusal would not be error. Numerous authorities will be found on page 805 of Vernon's Annotated C. C. P. sustaining the proposition that a motion for new trial such as is this supplement, must be sworn to, otherwise it will not be considered.

This disposes of the points made in the motion, and being unable to agree with appellant it will be overruled.

*Overruled.*

ED. FRENCH V. THE STATE.

No. 7852.   Delivered December 17, 1924.

Rehearing denied March 18, 1925.

1.—Keeping Premises for Storing Liquor—Bills of Exception—Bystanders' Bills—How Proven.

. Bystanders' bills of exception must be proven up by three bystanders, and two is not sufficient, and they must also show that they were first presented to the court for his approval and that he refused to approve them.   See Osborne v. State, 56 S. W. 54, Landrum v. State, 37 Tex. Crim. Rep., 666, Johnson v. State, 59 S. W. 900.

ON REHEARING.

2.—Same—Indictment—Not Duplicitous.

It is well settled that an indictment may charge in one count different means by which the offense might be committed.   Where several ways by which an offense may be committed are set forth in the same statute, embraced in the same definition and punishable to the same extent, and are not repugnant to each other, they may be charged conjunctively in the same count.   See Sec. 508, Branch's Ann. P. C.

3.—Same—Bill of Exception—Not Considered.

Where a bill of exception complaining of argument of state's attorney does not show that such argument was in fact made, other than the statement that it was objected to, will not be considered, and this court will not verify the allegations of one bill by reference to those of another.   Banks v. State, 62 Tex. Crim. Rep. 552.

4.—Same—Storing Liquor—For Purpose of Sale—Not Necessary.

The statute forbidding the keeping of premises used for storing intoxicating liquor does not provide that same must be kept for purpose of sale. Possession of and storage will constitute an offense.

5.—Same—Jury—Selection of—By Jury Wheel.

In counties where juries are selected by the jury wheel method Art. 5152 of our Civil Statutes provides that the names of all men who are known to be qualified jurors under the law shall be written on separate cards, and Art. 5153 of said chapter commands that all of said cards be placed in the wheel.   An objection that the law is discriminating and disfranchises certain jurors cannot be intertained by this court.

Appeal from the Criminal District Court of Travis County.   Tried below before the Hon. James R. Hamilton, Judge.

Appeal from a conviction for keeping premises for the purpose of manufacturing and storing intoxicating liquor; punishment, two years in the penitentiary.

The opinion states the case.

*James F. Hair,* of Austin, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Travis county of keeping and permitting to be kept premises for the purpose of manufacturing and storing intoxicating liquor, and his punishment fixed·at two years in the penitentiary.

There is no brief on file for appellant, notwithstanding which we have carefully through all the numerous bills of exception and complaints which we find in the record.

Appellant asked for a postponement of the trial until motions for new trials in cases against his brother could be heard and granted. The refusal was no error. It is not shown that upon a hearing the motions were granted, and it is reasonable to conclude they were not. The exceptions to the court's charge do not show to have been presented at the proper time and are further believed by us to be without merit. Special charges Nos. 10 and 11 were given. We have examined the other charges asked and find them either covered by the main charge or not supported by testimony, and we do not believe error appears in the refusal of any of them.

We have examined and considered each of the numerous bills of exception and are of opinion that a discussion of none of them would be and said to the profession nor clarity any point of practice. None of them manifest error. Several bills are attempted to be proven by bystanders. Each of said bills is proved up only by two bystanders, which is not sufficient. Osborne v. State, 56 S. W. Rep. 54. Said bills are further defective in not sufficiently showing that the trial court refused to approve them. Landrum v. State, 37 Texas Crim. Rep. 666; Johnson v. State, 59 S. W. Rep. ·900.

The court heard evidence on the presentation of the motion for new trial sought because of misconduct of the jury, and his action in refusing said motion presents no abuse of the discretion confided to him in such matters. We do not think the evidence need be set out. It amply showed both the manufacture and storage of intoxicating liquor or premises controlled by appellant and his brother.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.·

LATTIMORE, JUDGE.—Appellant insists that the indictment was defective and should have been quashed in response to his motion because duplicitous, that is, it charged two separate and distinct offenses in one count, viz: the unlawful keeping of his premises for the purpose of storing liquor,—and also the unlawful keeping of

said premises for the purpose of manufacturing liquor. The indictment charged appellant with keeping his premises to be used for the purpose of storing and manufacturing liquor. The gist of the offense is the keeping of his premises for an unlawful purpose, as said by this court in Wimberly v. State, 95 Texas Crim. Rep. 102. The principle involved is altogether different from that in Todd v. State, 89 Texas Crim. Rep. 99, and Melley v. State, 93 Texas Crim. Rep. 522. It is as though one charged with an assault with a knife, a bludgeon and a pistol, should object to the indictment because it set out different means by which the offense might have been committed, in the same count. In Sec. 508 of Mr. Branch's Annotated P. C. many authorities are cited in support of the proposition that where several ways by which an offense may be committed are set forth in the same statute, and they are embraced in the same general definition and are punishable in the same manner and to the same extent, and are not repugnant to each other, they may be charged conjunctively in the same count.

A bill of exceptions to the refusal to charge the jury not to consider certain argument of State's attorney, which contains no showing of the fact that such argument was in fact made, other than the statement that it was objected to, brings nothing before us. We are not permitted to verify the allegaions of one bill by reference to those of another. Banks v. State, 62 Texas Crim. Rep. 552.

We find nothing in the statute defining the offense charged against appellant which requires allegation or proof that the storing forbidden, in order to be penal, must be for "purposes of sale."

Nor are we able to agree that the law requiring the use of jury wheels in certain counties, restricts the selection of qualified jurors or disfranchises them. Art 5152 of the chapter of our civil statutes regarding the jury wheel, specifically requires that the officers charged with the duty of filling said wheel shall write the names of "all men who are known to be qualified jurors under the law" in such county on separate cards; Art. 5153 of said chapter commands that all of said cards shall be placed in the wheel. We are unable to comprehend how this could be in any sense restrictive or disfranchising. All qualifed jurors cannot sit in any given case. There must be provided means of selection. That under discussion takes the entire body of the jurors of the county and seems to us to provide a fair means of selecting from them juries for the week and venires.

Being unable to agree with any of the contentions of appellant, his motion for rehearing will be overruled.

# MARCH, 1925.

## Gus Brown v. The State.

### No. 8077.   Delivered March 4, 1925.

**1.—Sale of Intoxicating Liquor—Evidence—Possession of Whisky—Explanation of Admissible.**

Where on a trial for the sale of intoxicating liquor, appellant offers to testify that his possession of a gallon of whisky found in his possession, at the time of his arrest was lawful and on objection by the state this testimony is excluded, the cause must be reversed for such error.   See Sec. 94, p. 60, Branch's Ann. P. C. and authorities there collated.

**2.—Same—Witness—Refreshing Memory of—Exhibiting Confession.**

On redirect examination the state's attorney exhibited to his prosecuting witness a writing for identification of his, witness's signature.   The writing was not offered in evidence.   If the purpose of state's attorney was to get before the jury the fact that witness had made a confession that appellant was identified by him, as the person from whom he had bought whisky, this was improper, but if instrument in writing was exhibited for the purpose of refreshing the memory of witness, it was proper.

**3.—Same—Witnesses—Improper Examination of—Practice.**

Where a controversy arises between counsel for the state and appellant over the admissibility of a question asked a witness and objected to, it is highly improper and might be reversible error for counsel to state in the presence of the jury what he can and will prove by the witness, if such statement is damaging to the appellant.   If necessary for the enlightment of the trial court to apprise him of the facts expected to be proven, the jury should be retired, until the court has ruled on the admissibility of the evidence.

Appeal from the District Court of Hill County.   Tried below before the Hon. Horton B. Porter, Judge.

Appeal from a conviction for the sale of intoxicating liquor; penalty, one year in the penitentiary.

The opinion states the case.

*Morrow & Stollenwerck,* of Hillsboro, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Conviction is for the sale of intoxicating liquor with punishment of one year in the penitentiary.

The indictment contained only one count which alleged the sale of intoxicating liquor to one Robert Austin.   In developing its case, and before attempting to prove the alleged sale, the state called as its first witness an officer who testified that he arrested appellant on

the night of the alleged sale at the depot and found in a suit case belonging to him a gallon jug about two-thirds full of whiskey and two empty pint bottles. Austin was next called and testified that he bought from a negro at the depot on the night of the arrest a pint of whiskey; he declined to positively identify accused as the party making the sale, only going so far as to say that appellant "looked like" the party from whom he had made the purchase. The state proved by another witness the movements of appellant and Austin at the depot which was a circumstance strongly supporting the contention of the state as to the alleged sale. Appellant denied having made any sale to Austin or to any other party and offered to explain his possession of the liquor found by the officer. If permitted he would have testified that he had purchased the whiskey in question for medicinal purposes having procured the same in Corsicana and was taking it to his home in Itasca; that he was afflicted with rheumatism at the time, that the doctor had prescribed whiskey for him and likewise for his mother-in-law, who was an old woman, and that he had procured the whiskey for medicinal purposes for both himself and her. When appellant offered to make this explanation objection was interposed by the state upon the ground that appellant was not charged with having whiskey in his possession for the purpose of sale, but was charged with selling it. The evidence was excluded and this is assigned as error.

In Sec. 94, p. 60 Branch's Ann. P. C. the author announces the general proposition that "The defendant or any other witness is entitled to explain any fact tending to create distrust of his integrity or truthfulness." Many authorities are collated supporting the text; see also the more recent cases of Boone v. State, 85 Texas. Crim. Rep. 611, 215 S. W. 310, and Skinner v. State, 251 S. W. 810. Even more pertinent to the present question is the further proposition by the same author (Sec. 97, p. 62, Branch's Ann. P. C.) to the effect that "whatever material facts are introduced that tend to affect the issue, the other side has the right to deny, contradict or explain that testimony, showing its falsity, or breaking its force and effect in any legimate way." Some thirty cases from this court are cited by the author supporting the proposition. Evidence showing the possession of a quantity of whiskey by accused shortly after the alleged sale was unqestionably material and tended to affect the direct issue under investigation. It is true accused was not charged with possessing the whiskey for the purpose of selling it, but the effect of the evidence introduced by the state was to induce the jury to believe that he had it with such intent, and was actually carrying it out. The fact of possession was introduced by the state as a criminative circumstance against him. If he could show it was purchased for medicinal purposes it is true it would be no defense to a sale of part of it, but the fact of sale

Tex. Crim.—28.

being controverted he should have been permitted to explain the purpose of its possession, thereby breaking, if he could, the force of this criminative fact put in evidence by the state. In this connection we refer to Mayo v. State, 92 Texas Crim. Rep. 624, 245 S. W. 241; Ellis v. State, 93 Texas Crim. Rep. 322, 247 S. W. 509; Warren v. State, 250 S. W. 429. The matter just discussed appears to be the chief complaint of appellant and in our opinion demands a reversal.

After Austin had testified on direct examination that he had purchased a pint of whiskey from a negro at the depot and that appellant looked like the man, it was elicited from him on cross-examination by appellant that said witness was arrested shortly after the alleged purchase and placed in jail; that thereafter he was brought before the grand jury a number of times and testified that he did not know from whom the purchase was made and could not identify the seller, but that after staying in jail some ten or twelve days he finally told the grand jury appellant looked like the man from whom he had made the purchase and that upon making this statement he was immediately released from jail; that from the time he first told the grand jury he did not know who sold the whiskey, and during the time he was in jail, he had not seen appellant. On re-direct examination the state undertook to prove by said witness that he had made a statement to the officer who arrested him in which he had identified appellant as the seller; after propounding some leading questions to the witness relative to the matter counsel for the state exhibited to him a purported written statement asking the witness to identify his signature thereto. It does not appear from the bill that the statement itself was ever offered in evidence and the particular objection as we understand it was that the state was permitted to exhibit to the witness in the presence of the jury a written instrument purporting to be a statement by the witness as to the transaction with appellant in which he identified the latter as the seller, thus indirectly getting before the jury the contents of the statement. It is appellant's contention that nothing was developed in the cross-examination of the witness which would justify the state in putting in evidence the statement or its contents. Upon the general subject of when and the manner in which proof of prior identification may be shown reference is made to Weaver v. State, 68 Texas Crim. Rep. 214, 150 S. W. 785. See also the recent case of Fortune v. State, 259 S. W. 573, which refers to Weaver's case, supra, and many others from which the correct rules may be ascertained. If it was the purpose of counsel for the state to refresh witness' recollection by the statement in question the proper procedure is suggested in Spangler v. State, 41 Texas Crim. Rep. 430, 55 S. W. 326. If it was sought to get before the jury the contents of the written statement without introducing it in evidence, same was improper and should be avoid-

ed upon another trial. As to whether the statement itself was admissible we do not discuss, that question not being before us, and having no information of its contents. This may arise upon another trial and we refer to Bryan v. State, 90 Texas Crim. Rep. 175, 234 S. W. 83; Katz v. State, 92 Texas Crim. Rep. 629, 245 S. W. 242; Whitman v. State, 93 Texas Crim. Rep. 200, 246 S. W. 1037, as throwing light upon the question.

Another bill relates largely to this same matter. It appears that the officer was placed upon the stand and interrogated relative to the identification by the witness Austin of appellant as the seller of the whiskey at the time said witness was arrested. It does not appear from the bill that the officer was permitted to testify but it does show that in a discussion of such matter before the court in the presence of the jury counsel for the state in effect told the court that if permitted to do so he could prove by such officer that the witness did so identify appellant. This is not the exact wording of the bill but such we understand to be its effect. Counsel should refrain from stating in the presence of the jury what he can prove when the controversy is as to whether such proof is properly admissible.

For the errors discussed the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

### DISSENTING OPINION.

LATTIMORE, JUDGE—Robert Austin swore point blank that at the depot in Hillsboro he bought a pint of whiskey from appellant; that he and appellant were in a toilet when the agreement to sell was made, and appellant told him to go back into the waiting room, get a grip and bring it to the toilet, which he did, and appellant took from the grip a pint of whiskey and sold it to witness for two dollars. Both appellant and Austin are negroes. Another negro, an employe at said depot, swore that he saw appellant and Austin go into the toilet,—saw Austin come out and get a grip and take it back while appellant was still in said place. When arrested appellant had a jar partly full of whiskey and two empty pint bottles in his grip. He claimed to have absorbed the contents of the two bottles at Corsicana the night before. He swore that the sheriff at the jail called him a G—d d—n liar and hit him over the head with a black snake whip. A number of white men who lived in the same town with appellant testified for the defense.

I regret that I can not agree that this case should be reversed because the court below declined to permit appellant to testify that he bought the gallon of whiskey found in his possession for medicine for himself and mother-in-law; that a doctor had prescribed it for

both of them. The charge against appellant was the sale of a pint of whiskey. No special emphasis was laid in the development of the case upon the fact that appellant had the larger quantity of whiskey in his grip but simply came out as part of the res gestae of the transaction.

Appellant flatly denied making the sale. In this he was contradicted by Austin. Appellant denied going into the toilet or having the grip in there. In this he was contradicted by Coffee and Austin. Appellant asserted that when arrested he had a full gallon of whiskey that he had bought in Corsicana the night before for himself and his mother-in-law. In this he was contradicted by Mr. Elliott, a white man, who testified that the gallon jar found in appellant's grip at the time of his arrest was two thirds full of whiskey. Appellant swore that the sheriff called him a G—d d—n liar at the jail and hit him over the head with a black snake whip. In both statements he was directly contradicted by the sheriff.

The jury having refused to believe appellant when he denied the sale of the whiskey, which was the direct issue in the case, it seems to me wholly improbable, in view of all the facts and the numerous contradictions of appellant, that his statement that he had the liquor for medicine for himself and his mother-in-law, would have favorably affected the verdict. Nothwithstanding they were apparently in Hill county, no doctor was offered as a witness, no mother-in-law was produced, no one of the number of witnesses from appellant's home town was asked if he knew that appellant or his mother-in-law was sick or afflicted in any way. I am unable to bring myself to believe that this court is called on to reverse this case upon the hypothesis that the naked word of this appellant on the collateral issue of whether he had the liquor for medicine or not, would or might have favorably affected the verdict of guilty of a sale of the pint of liquor. The jury gave appellant the lowest penalty. I think the judgment should be affirmed. Being unable to agree to this reversal, I respectfully record my dissent.

# FEBRUARY, 1925.

## B. C. Calloway v. The State.

No. 8629.   Delivered February 18, 1925.

Rehearing denied, March 18, 1925.

**1.—Possessing a Still—Bill of Exception—Incomplete.**

Where a bill of exception complains of the admission of testimony, and does not point out intelligently wherein, nor why same is not admissible, it cannot be considered.

2.—Same—Confession—Disclosing Other Offenses—Admissible.

The fact that a confession made by appellant that he was in the posses-sion of mash, and was hauling it for the purpose of making whisky was not rendered inadmissible by reason of the fact that such confession also dis-closed the commission of another offense.

3.—Same—Sentence—Reformed.

It appearing to the court that in passing sentence upon appellant he was not given the benefit of the indeterminate sentence law, but was condemned to serve two years, in the penitentiary, the sentence will be reformed to read that he be confined in the penitentiary for not less than one nor more than two years.

Appeal from the District Court of Kaufman County. Tried be-low before the Hon. Joel R. Bond, Judge.

Appeal from a conviction of possession of a still for manufactur-ing intoxicating liquor; penalty, two years in the penitentiary.

The opinion states the case.

*Wyne & Wyne* of Kaufman, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for the un-lawful possession of a still for manufacturing intoxicating liquor. His punishment was assessed at two years, confinement in the peni-tentiary.

The evidence shows conclusively that appellant had prepared several barrels of mash from which he intended to make whiskey. He had ordered a still for that purpose which arrived in the city of Terrell on the day preceding the arrest. He undertook to move the mash from Terrell to a point in the country. The wagon in which the barrels were loaded bogged in the mud before reaching his desti-nation. He started to this point with the still also, but upon dis-covering that the mash could not be carried through had turned back towards Terrell with the still in his car when he was appre-hended by the officers.

Appellant complains that the state was permitted to prove by the officers that they had found a number of stills running in Kauf-man County. The bill is insufficient in that it fails to show that the evidence objected to was not admissible upon some issue in the case. An examination of the statement of facts reveals that the mash found by the officers and the still found in possession of appellant were at different places. The still had never been assembled. The officers testified that with the equipment found in appellant's pos-session and with the mash found at another point (but shown to have belonged to appellant) whiskey could have been made. It may

have been the purpose of the testimony complained of to show the officers were familiar with stills and their operation and therefore qualified to testify that the equipment in connection with the mash could be successfully utilized in the manufacture of liquor.

There is no merit in the contention that the confession of appellant to the effect that he was in possession of mash and was hauling it for the purpose of making whiskey was inadmissible as disclosing the commission of another offense. All of the evidence was pertinent to the particular transaction under investigation.

We observe that in passing sentence upon appellant he was not given the benefit of the Indeterminate Sentence Law but was condemned to serve two years in the penitentiary. The sentence will be reformed to read that he be confined in said penitentiary for not less than one nor more than two years.

As thus reformed, the judgment is affirmed.

*Affirmed.*

---

## B. C. Calloway v. The State.

No. 8630.  Delivered February 18, 1925.

Rehearing denied March 18, 1925.

**1.—Manufacturing Mash—Jeopardy—Plea of—Properly Overruled.**

Where on a trial for the manufacture of mash, from which intoxicating liquors were to be made, a plea of jeopardy setting up a former conviction for transportation of a still, was properly overruled. The act of manufacturing mash, and transporting a still constitute separate and distinct offenses, and an acquittal or conviction of one is no bar to a prosecution for the other.

**2.—Same—Practice—Motion to Dismiss—Not Proper.**

Where appellant filed what he denominated "A motion to dismiss," on the grounds that he had been tried and convicted in another cause for transporting a still, while not proper practice, the trial court committed no error in overruling such motion, it not appearing that the former conviction was for the same offense for which appellant was on trial in this cause.

**3.—Same—Evidence—Possession of Still Properly Admitted.**

Evidence that appellant was found some four miles from the location of the mash that he was on trial charged with manufacturing, in possession of and transporting a still, was properly admitted, as a circumstance to show that the mash was intended by him to be used in the manufacture of whisky.

ON REHEARING.

**4.—Same—Bill of Exception—Improperly Drawn.**

Appellant was on trial charged with manufacturing mash, and a bill of exception complaining of the admission of evidence of the finding of mash in his wagon, which he admitted that he had manufactured to be used by him in making whisky, must have been presented inadvertently by counsel as it had no application whatever to this case and manifests no error.

Appeal from the district Court of Kaufman County. Tried below before the Hon. Joel R. Bond, Judge.

Appeal from a conviction for manufacturing mash from which spirituous, vinous and intoxicating liquor was to be made; penalty, two years in the penitentary.

The opinion states the case.

*Wyne & Wyne,* of Kaufman, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Kaufman county of manufacturing mash from which spirituous, vinous and intoxicating liqors were to be made, and his punishment fixed at two years in the penitentiary.

The facts in evidence seem ample to support the conviction and need not be stated further than may be necessary to make clear our announcement of the legal principles involved.

Appellant filed a plea of former acquittal alleging that in cause No. 8640 he had been placed on trial under an indictment charging in three counts possession of a still (without describing the parts), transportation of a still (without description of the parts), and possession of equipment and a still (describing the parts), and that on the trial of said charges he had been acquitted. The learned trial judge made an order overruling said plea. There appears no bill of exceptions complaining that such plea was not submitted to the jury. Appellant also made what is denominated "A motion to dismiss," alleging that in cause No.8640 (containing the three same counts above referred to), he had been tried and convicted. The trial court overruled this motion. There are three bills of exception, the first of which was taken to the refusal of the motion to dismiss. We are in doubt as to the correctness of such practice as the filing of such motion to dismiss, which was addressed to the court. However, if such practice be proper, the court was called on to decide the questions thus presented. It appears that a complete still was found in appellant's car, which finding formed the basis of the prosecution for the possession and transportation of the still. It also appears that at a different time and place eight barrels of mash belonging to appellant were found and this transaction was made the basis of the prosecution for the possession and manufacture of said mash. Appellant made a written confession admitting that he had the still and that he purposed making whiskey on same out of said mash. Not only do these things show two entirely separate and distinct offenses, but in support of the motion to dismiss it was not shown that the judgment in cause No. 8640 was a final judgment, and no effort

seems to have been made to submit the matters involved to the jury. If called on to act on such a motion, we think the action of the trial court in overruling it entirely correct.

No error appears in the complaint of the reception of evidence showing that on the same day on which officers found the eight barrels of mash with which appellant was shown to have been connected, he was found in Terrell, some four and one-half miles from where the mash was located, and that in Terrell he had a still in his car. An element of the offense of possession, transportation, etc. of mash is, that it was made, etc., for the purpose of manufacturing intoxicating liquor. Appellant's possession of a still in the same neighborhood and about the same time as that of the mash, would be a circumstance tending to make plain his purpose and intention in regard to the mash.

We do not comprehend the third bill which presents objection to the introduction of testimony of the finding of the two wagons with the barrels of mash in them on the same day appellant was found with the still in his car. The offense here on trial was the making of said mash. The finding of same and the showing of appellant's connection therewith were the material facts involved in the instant prosecution.

No error appearing, the judgment of the trial court will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, Judge.—Appellant insists that we erred in what we said, and also in that we did not say anything about his third bill of exceptions. We are satisfied that what we said was correct, and we did not discuss said third bill of exceptions because of our belief that it was taken under a misapprehension. It is now insisted that we should discuss it.

Appellant was on trial for manufacturing mash. Bill No. 3 recites that certain witnesses having sworn that they found appellant in a car with a still in boxes, were also asked if they found anything in a wagon about four and one-half miles from there on Sunday morning, the same day the still was found in appellant's car. This was objected to for the reason that appellant was being tried for transporting a still and equipment, etc., and that to prove that he was seen that same morning four and one-half miles away with mash in barrels in a wagon, had no bearing on the issue; that the court overruled the objection and permitted Mr. Carter to swear that he found two barrels of mash in the wagon on that day and that appellant was trying to drive said wagon down the road, etc. The terms of the bill manifest the fact that it has no application.

and we are still of opinion that it was taken under a misapprehension. In manifests no error.

The motion for rehearing will be overruled.

*Overruled.*

---

## B. A. BROWN v. THE STATE.

No. 8646.   Delivered February 18, 1925.

Rehearing denied March 18, 1925.

### 1.—Embezzlement—Bills of Exception—Time of Filing.

Art. 845, Vernon's C. C. P., provides that in the absence of any order, granting time in which bills of exceptions may be filed, all parties shall have 30 days after adjournment of the court in which to file statement of facts and bills of exceptions, in case the term of court does not extend more than eight weeks. Time for filing may be extended by an order of the court entered before the expiration of the time provided by law, or previously granted by the court. The bills of exception in this case were filed in time.

### 2.—Same—Statements by Appellant—Properly Admitted.

Statements made by appellant, at the time of the commission of the offense, as well as thereafter, of an incriminative character, are admissible in evidence, if material, and no error is shown in the admissions of appellant's statements in this case.

### 3.—Same—Agency—Charge of Court—Definition of—Correct.

Where on a trial for embezzlement the court charged the jury, "You are instructed that an agent is one who undertakes to transact some business, or to manage some affair for another, by authority and on account of the latter," such charge correctly presents the law and is approved. See Corpus Juris, Vol. 2, page 420.

### 4.—Same—Embezzlement—Elements of.

The same facts in a given case may constitute theft by fraudulent pretext, and embezzlement. The fraudulent pretenses which induce the owner to deliver his property to one whom he intends shall become his agent, does not affect the actual agency of the one who fraudulently receives the property with the pretended purpose of carrying out the trust agreed upon by him, and his subsequent appropriation of the property would complete the offense of embezzlement, just as it would if the state had relied upon the fraudulent pretences by which possession was secured, in prosecuting him for theft by fraudulent pretext. See Golden v. State, 22 Tex. Crim. App. 14, and other cases collated and discussed in motion for rehearing.

Appeal from the County Court at Law, of Tarrant County. Tried below before the Hon P. W. Seward, Judge.

Appeal from a conviction of a misdemeanor embezzlement; penalty, two years in the county jail and a fine of $200.00.

The opinion states the case.

*Mays & Mays,* of Ft. Worth, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the county court at law of Tarrant county of misdemeanor embezzlement, and his punishment fixed at two years in the county jail and a fine of $200.00.

There were three counts in the indictment, one charging theft in the ordinary form, one charging theft by bailee, and the third charging embezzlement. Only the third count was submitted by the learned trial judge. Two special charges were requested each of which was given. There are three bills of exception. The State contends that we can not consider said bills because filed too late. The contention is not supported. The trial term of the court below ended on January 5, 1924. In his order overruling the motion for new trial made on Jan. 3 the court granted 30 days in which to file bills of exception. On the 3rd of February the court granted an extension order, extending the time 60 days in which to file such bills of exception. The State contends that the 30-day period first granted had expired before February 3rd, and hence the trial court was without power on said last mentioned date to make an order extending the time. This would be true if the term of the trial court extended more than eight weeks but it did not. Art. 845, Vernon's C. C. P. provides that in the absence of any order at all parties to criminal cases shall have 30 days after adjournment of the court in which to file statements of fact and bills of exception, in case the term of court does not extend more than eight weeks. The term of the trial court ending January 5, 1924, and the extending order being made on February 3rd following, would be within the 30 days allowed by said statute. The bills were filed March 18th, and were in time.

The complaint in the first bill of exceptions is that witness Smith, owner of the alleged embezzled money, was permitted to testify that appellant told him on the night of the alleged embezzlement that he had arrested five other couples that night. In our opinion the testimony was admissible. The State's theory of the case was that appellant, pretending to be an officer, arrested Smith and his companions for parking their car by the roadside at night, and that appellant obtained $38.40 in money from Smith upon his promise and agreement to take said money and with it pay a fine and the costs which he said would be adjudged against Smith upon appellant entering a plea of guilty for Smith to a criminal charge based on what Smith was doing at the time. The testimony objected to

would appear to be a part of the representations used by appellant to induce Smith to turn over the money to him.

It is urged in the second bill of exceptions that the trial court erred in letting in a conversation testified to by witness Smith as having been had with appellant in regard to returning the money, which conversation was objected to upon the ground that it occurred subsequent to the commission of the alleged offense. We are unable to see the validity of the objection. If appellant came to Smith after having obtained from him the money, and probably after charges had been made, and had a conversation with him in regard to returning the money, this might be very material evidence.

The third bill of exceptions was taken to a paragraph in the charge of the court wherein the court said:

"Gentlemen: You are instructed that an agent is one who undertakes to transact some business, or to manage some affair for another, by the authority, and on account of the latter."

We find ourselves unable to uphold this contention. In Corpus Juris, Vol. 2, under the head of "Agency" on page 420, appears the following:

"An agent is defined to be one who acts for or in place of another by authority from him; one who undertakes to transact some business or manage some affair for another by authority and on account of the latter."

This appears to be in harmony with the instruction given by the trial judge.

Appellant has filed a brief in which he urges that he could not be guilty of the offense of embezzlement under the evidence in this case. He seems to insist that at most the question involved would be one of bailment. The relation of bailee as involved in our statute on theft by bailee is constituted where one obtains the property of another with the intent to use it for his own benefit, and then to return it. As we understand the facts in this case, it was not contemplated, if the State's theory be true, that the money should ever be returned to witness Smith. Appellant having arrested Smith in his pretended character as an officer, then entered into an agreement with him that he would act for Smith in taking the money of the latter and delivering it to the proper authorities in payment of a fine and costs which they would assess against Smith, upon complaint being made against him. We find nothing in Grice v. State, 225 S. W. Rep. 172, supporting any issue properly raised by the facts in this case. The money delivered to appellant was unquestionably the money of Smith. Appellant was undertaking as Smith's agent to deliver it to the proper authorities in payment of a fine which he informed Smith would be assessed against him. Appellant was not a judge or a sheriff and had no power to then assess or collect a fine. The fact that appellant was undertaking to do this

ostensibly without compensation would not alter the fact of his agency.

Not being able to agree with any of the propositions advanced, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The proposition is ably discussed in the motion that though the facts may show a case of theft by false pretext, yet if it appears that at the time appellant came into possession of the money he then intended to fraudulently appropriate it,—he may not be guilty of embezzlement but may be convicted of theft by false pretext; and it is insisted that the testimony shows such to be the case.

The question is of some interest, but seems to have been decided against appellant's contention even if his conclusion as to the facts be correct. In Leonard v. State, 7 Texas Crim. App. 444, appears this broad statement: ''What is embezzlement? A fraudulent appropriation of the property of another, by a person to whom it has been intrusted.'' Golden v. State, 22 Texas Crim. App. 14, seems decisive against appellant. We quote:

''But, again, it is most urgently insisted that the evidence does not warrant a conviction for embezzlement; that if any offense is established against defendant, it is theft and not embezzlement. We are free to concede that the defendant might have been convicted, under the evidence developed of theft, by having obtained the money under false pretenses—the pretense being that he wanted to deposit it in bank to secure it for the owner—his intention at the time being to deprive the owner of it and appropriate it to his own use. But the fact that he might have been convicted of theft does not militate against the fact that he might, under the same circumstances, be guilty of the crime of embezzlement. 'All authorities treat embezzlement as akin to larceny, and the statutory offense of embezzlement mainly originates in a necessity which resulted from the inapplicability of the common law of larceny to breaches of trust by persons occupying fiduciary relations. Concisely defined, it is the fraudulent appropriation of another's personal property by one to whom it has been intrusted. The fraudulent conversion may be consummated in any manner capable of effecting it, and its commission is a question of fact and not of pleading when the indictment charges that defendant did embezzle, fraudulently misapply and convert to his own use the property entrusted to him.' (Leonard v. The State, 7 Texas Ct. App. 418; Cole v. The State, 16 Texas Ct. App. 461.)

Defendant induced Mrs. Weedon to turn over the money to him, ostensibly and with the understanding that he was to deposit the

same for her in bank for safe keeping. She intrusted it to him for that and no other purpose. At the very time he obtained it, it is true that to all intents and purposes he was a thief, intending to steal it; but in so far as she was concerned, she was only creating him her agent to take the money for deposit for her to the bank. The trust imposed in him by her was that he would, as her agent, take the money to the bank, and it was intrusted to him solely for that purpose. Instead of complying with the purposes of the trust and his agency, he misapplied, misappropriated, embezzled and converted to his own use the money so confided to him. The evidence makes a most clear and indubitable case of embezzlement, even though it may contain all the essential elements of theft also. It amply sustains the conviction for embezzlement, and we feel fully justified in adding that the facts developed in this record discover as heartless and as inhuman a wrong to obtain money by fraudulent devices as is rarely to be found in the history of crimes unaccompanied by personal violence.''

See also Landrum v. State, 166 S. W. Rep. 726. In the Golden case, supra, as in the instant case, there was one count charging theft by bailee and another charging embezzlement, and the contention was made, after conviction under the embezzlement count, that it was a case of theft by bailee and that the conviction could not stand. It would appear sound that the fraudulent intent in the mind of the person accused at the time the fiduciary relation was created, could not be used by him to combat and overturn the fact of such relationship and his receipt of the property from its owner by virtue thereof.

Is appellant correct in his assumption that the facts negative the existence of any agency relationship? Smith, the alleged owner of the money, testified that appellant told him he had arrested other persons and had ''turned the money in under an assumed name, and I didn't want any publicity, and he said he would avoid all of that.'' Smith testified that after arresting him and talking to him about it, appellant figured the amount of the fine and he gave it to appellant, and said witness further testified ''He said he would turn the money in under an assumed name and there would never be nothing to it; that he would turn the money in under an assumed name to avoid publicity.'' Again Smith said: ''I did not give my consent to this defendant to convert that money to his own use. I told him to turn it in. He told me that it would be turned in to the registry of the court under an assumed name.'' That this made appellant the agent of Smith for the purpose of paying the money so turned over to appellant to the authorities, seems clear. Smith v. State, 53 Texas Crim. Rep. 121; Adams v. State, 172 S. W. Rep. 219.

Regretting our inability to agree with the propositions advanced, the motion for rehearing will be overruled.

*Overruled.*

## John W. Cavanar v. The State.

### No. 9049.   Delivered February 24, 1924.

### Rehearing denied March 18, 1925.

**1.—Murder—Bill of Exception—Must Conform to Rules.**

Where on a trial for murder a bill of exception taken to the admission of statements made by appellant *on the ground* that the appellant was under arrest at the time, is not equivalent to a specific statement in the bill that appellant *was in fact under arrest*.

**2.—Same—Evidence—Erroneous Admission of—Not Reversible Error.**

Where testimony of a witness is admitted erroneously, it will not constitute reversible error, if the same evidence has been admitted without objection from another witness. As is said in the Wagner case, 53 Crim. Rep. 307. "It is well settled in this state that the erroneous admission of testimony is not cause for a reversal, if the same fact is proven by other testimony not objected to."

**3.—Same—Practice—On Appeal—Rule.**

The practice in this state is that when a ruling of the trial court upon the receipt or exclusion of evidence is attacked on appeal, the correctness of the ruling will be presumed, in the absence of a showing in the bill of exceptions to the contrary, and the presumption in favor of the ruling is not overcome by a mere recital in the bill of the *grounds assigned* for opposing the ruling.   See numerous authorities cited in this opinion.

**4.—Same—Separation of Jury—Not Reversible Error—In this Case.**

Where, upon the trial of this case, one of the jurors went into the toilet of the court house, and the other jurors went up stairs into the court room he following shortly, the separation was not such as to warrant a reversal. See Bayer v. State, 96 Tex. Crim. Rep. 310.

Appeal from the District Court of Limestone County.   Tried below before the Hon. A. M. Blackmon, Judge.

Appeal from a conviction for murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Wallace W. Mason,* and *E. G. Lloyd, Jr.,* of Groesbeck, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for life.

It seems that the appellant and his wife were in their house alone; that at some time between the evening of the 20th of April and the

morning of the 21st of that month, the throat of the appellant's wife
was cut and she was killed. The appellant's throat was cut and he
was wounded. There was a razor found, and its condition, together
with the appearance of the premises, indicated that the homicide had
been committed with the razor in the house in which the deceased
and appellant were found.

Two boys were the first to discover the condition of appellant and
deceased. According to the testimony of one of them, he and a com-
panion went to the home of the appellant and knocked on the door.
Receiving no response, they looked in the window and saw the ap-
pellant and his wife lying on the floor. Appellant cursed the witness
and told him to go away. The boys informed the witness Reese,
father of the deceased, who went immediately to the premises and
found his daughter and the appellant lying on the floor facing each
other. The daughter was dead. The witness said to the appellant:
"John, what did you do this for; what did you kill her for?" Ap-
pellant replied: "I was tired of living." The witness testified "I
thought he was dying then or would be dead in a few minutes."
Popejoy, the sheriff, and Bradley, his deputy, arrived after a short
time. Upon entering the premises, Popejoy found the deceased and
appellant lying upon the floor. The appellant was wounded and
blood was coming out of the windpipe as he breathed. There was a
razor laying upon the floor near the appellant's feet with blood upon
it. The witness noticed that the appellant opened his eyes, looked up
and was trying to speak.

Bradley testified that while appellant was lying on the floor, about
thirty of forty minutes after the witness reached the scene, and while
the sheriff had gone for a truck, the appellant made a reply to a
question propounded by Bradley, which question and answer were
received in evidence. A bill of exceptions was reserved to the receipt
of this testimony in which it is said:

"The said defendant, by counsel, objected to the introduction of
said evidence at the time it was offered for the reason that same
was a statement of the defendant confessing his guilt, made by him
to an officer while he was under arrest and in the custody of said
officer without the defendant being first duly warned that he did
not have to make any statement and that any statement he made
might be used in evidence against him on his trial for the offense for
which he was under arrest."

The court, in charging the jury on the issues in the case, said
that the testimony of Bradley could be considered alone in passing
upon the question of sanity or insanity of the appellant at the time
of the killing and that it was limited to that purpose. It is to be
noted that the bill does not affirmatively state that the appellant was
under arrest at the time. From the bill it appears that Bradley, a

deputy sheriff of Limestone County, was called as a witness and testified on behalf of the State as follows:

"John Cavanar made a statement to me while lying in the middle of the floor. 'I asked him why he did what he did', and he said, 'I wanted to go and wanted her to go with me'."

The balance of the bill is quoted above.

The rule is well established that the mere statement of the ground of objection does not supply the necessary requisites of a bill. See Branch's Ann. Texas P. C., p. 134, sec. 209. In other words, in the present case, the mere statement in the bill that there was an objection made upon the ground that the appellant was under arrest at the time is not equivalent to a specific statement in the bill that the appellant was in fact under arrest.

The testimony of Bradley of which complaint is made, however, is substantially the same as that revealed by the witness Reese, which statement seems to have been made by the appellant before the officers arrived and before there was any question of arrest. According to his testimony, Reese rushed into the premises and observing the conditions, asked the appellant why he killed the deceased and received the reply which the witness detailed, as above set out. If in this view we are correct, the rule of evidence which ordinarily obviates the necessity of a reversal for the receipt of improper testimony when the same evidence from another source is before the jury without objection, would operate upon the testimony of Bradley. This question was under consideration in Wagner's case, 53 Texas Crim. Rep. 307, in which Judge Ramsey, writing the opinion, used this language:

"It is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony not objected to. See Rogers v. State, 26 Texas Crim. App. 404; Walker v. State, 17 Texas Crim. App. 16; Johnson v. State, 26 S. W. Rep. 504; Stephens v. State, 26 S. W. Rep. 728; Logan v. State, 17 Texas Crim. App. 50; West v. State, 2 Texas Crim. App. 460, and Carlisle v. State, 37 Texas Crim. Rep. 108.

This principle has been applied in many subsequent cases. See Snow v. State, 91 Texas Crim. Rep. 1; Charles v. State, 85 Texas Crim. Rep. 537; Davis v. State, 83 Texas Crim. Rep. 546; Mason v. State, 79 Texas Crim Rep. 169; Moore v. State 81 Texas Crim. Rep. 302; Smith v. State, 81 Texas Crim. Rep. 369; Utsler v. State, 81 Texas Crim. Rep. 504; Goss v. State, 83 Texas Crim. Rep. 353; Kountz v. State, 241 S. W. Rep. 161; Nochols v. State, 238 S. W. Rep. 234.

Touching the testimony of Bradley, however, it may be plausibly contended that its receipt in evidence would be justified under the rule of res gestae. See Calloway v. State, 92 Texas Crim. Rep. 508; also motion for rehearing, p. 516. At all events, it may have been

res gestae, and the bill of exceptions does not show the contrary. The practice is that when a ruling of the trial court upon the receipt or exclusion of evidence is attacked upon appeal, the correctness of the ruling will be presumed in the absence of a showing in the bill of exceptions to the contrary. In Moore's case 7 Texas Crim. App. 14, the principle is announced that the presumption in favor of the ruling is not overcome by a mere recital in the bill of the *grounds assigned for opposing the ruling.* This is emphasized in Douglas v. State, 58 Texas Crim. Rep. 122; Fuller v. State, 50 Texas Crim. Rep. 14; Bigham v. State, 36 Texas Crim. Rep. 453; Hamlin v. State, 39 Texas Crim. Rep. 579; James v. State, 61 Texas Crim. Rep. 232; Conger v. State, 63 Texas Crim. Rep. 327; Morgan v. State, 82 Texas Crim. Rep. 615.

In Ford v. State, 40 Texas Crim. Rep. 283, a murder case in which the death penalty was assessed, appellant offered his own declarations which were excluded upon the ground that they were not a part of the res gestae. Appellant complained of the ruling. This court said:

"Of course, if these statements or declarations as presented in the bill of exceptions were res gestae, the court committed an error in excluding the same. In our opinion, the bill should show all the circumstances which constitute the statement of appellant, under the circumstances, res gestae; that is, the bill should show on its face that the court committed an error in excluding the testimony."

See also Brown v. State, 44 S. W. Rep. 175; McNeal v. State, 43 S. W. Rep. 792; Munger v. State, 57 Texas Crim. Rep. 384; Kirkpatrick v. State, 57 Texas Crim. Rep. 17; Vernon's Texas Crim. Stat., Vol. 2, p. 542, note 29, subdivision 4; Anderson v. State, 83 Texas Crim. Rep. 276; Brown v. State, 83 Texas Crim. Rep. 451; Branch's Ann. Texas P. C., p. 134, sec. 209.

If the appellant was under arrest, his verbal statement in the nature of a confession was not admissible upon the issue of insanity. Hurst v. State, 40 Texas Crim. Rep. 378. If admissible at all, it was upon the issue of guilt, and its limitation by the charge of the court was unnecessary but favorable to the appellant.

For the reason stated above, we have concluded that the record fails to show that there was error in receiving the testimony of Bradley, and that even if it appeared improperly received, it being but a repetition of the testimony of Reese against which no objection was urged nor tenable, the receipt of Bradley's testimony would not warrant a reversal of the judgment.

Insanity was the defensive theory. Upon that subject the evidence was conflicting. The solution of that issue by the jury is conclusive upon this court.

A separation of the jury is set up in the motion for new trial, but the facts developed, do not, in our judgment, sustain the con-

tention. One of the jurors went into the toilet of the court house and the other jurors went upstairs into the court room. He followed them shortly, and in our opinion, the transaction comes within the purview of the law as stated in Bayer v. State, 96 Texas Crim. Rep. 310; Wood v. State, 84 Texas Crim. Rep. 187; Watson v. State, 82 Texas Crim. Rep. 305, and other cases referred to in those mentioned.

No bills of exception save those that have been mentioned are found in the record.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant files a motion for rehearing, citing many authorities and showing care and effort in the preparation and presentation of the questions raised. A review of the record discloses but two bills of exceptions were taken, one of which complains of an alleged separation of the jury and the other, of the admission of the testimony of Jack Bradley, a deputy sheriff, who was permitted to make the statement set out in the original opinion. Alleged error in failing to sustain the second bill of exceptions is argued at length in the motion.

We are compelled to take the record as it is made in the trial court, and with reference to this matter, after stating the objectionable testimony in said bill, same sets out the objection made by appellant, which is also quoted in the original opinion, viz: that appellant objected to the admission of the statement because made to an officer while under arrest and without warning. How is this court to know that appellant believed himself to be under arrest? How is this court to know that the officer had disclosed his official capacity, or that same was known to appellant? These matters being stated in the bill merely as grounds of the objection, do not prove themselves. We have no better settled principle of practice than that the bill by its own contents and terms must manifest the truth of the matters stated as grounds of objection, and many authorities affirm the proposition that this court can not be compelled to search through the statement of facts and other parts of the record in order to find out whether matters objected to were really objectionable. The bill before us, after stating the objections made, proceeds to set forth that the court overruled the objections and admitted the testimony to which the defendant excepted. This is not enough.

We regret that we can not vary the rules established. A review of many authorities cited by counsel in his able brief would be interesting as probably explaining what he thinks to be utterances of the court in line with his contention, but we are compelled to content

ourselves with saying that we do not think same show the conclusion reached by us and announced in the opinion to be incorrect.

The motion for rehearing will be overruled.

*Overruled.*